Dale M. Cendali
Joshua L. Simmons
Brian Leary
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
brian.leary@kirkland.com

*Attorneys for Plaintiff Fox News Network, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOX NEWS NETWORK, LLC, | Case No.  13 Civ. 5315 (AKH) |
| Plaintiff, | ECF Case |
| - against - | **NOTICE OF DEPOSITION OF** |
| | **DEFENDANT TVEYES, INC.** |
| TVEYES, INC., | **PURSUANT TO RULE 30(b)(6)** |
| Defendant. | |

PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure 26 and 30,

Plaintiff Fox News Network, LLC ("Fox News") will take the deposition upon oral examination

of Defendant TVEyes, Inc. ("TVEyes").

The deposition will begin on **Tuesday, March 25, 2014**, at the New York offices of

Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, at 9:30 a.m. ET, or at such

other place or time as may be agreed upon by counsel, and will be held before a notary public or

other person authorized to administer oaths in this action.  The deposition will continue from day

to day until completed or otherwise adjourned, and may be recorded by stenographic, audio,

audiovisual, video, or real-time computer means.  The deposition will be taken for the purposes

of discovery, for use at trials or hearings, and for any other purpose permitted under the orders of

the presiding Court and the Federal Rules of Civil Procedure.

Pursuant to Federal Rule of Procedure 30(b)(6), Fox News request that TVEyes designate

one or more officers, directors, managing agents, or other persons who consent to testify on

TVEyes's behalf, who shall testify about information known or reasonably available to TVEyes

relating to the matters listed in the attached **Schedule A**.

Dated: New York, New York
      February 21, 2014

_____

Dale M. Cendali
Joshua L. Simmons
Brian Leary
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
brian.leary@kirkland.com

*Attorneys for Plaintiff*
FOX NEWS NETWORK, LLC

## SCHEDULE A:
## SUBJECT MATTERS ON WHICH DEPOSITION TESTIMONY IS REQUESTED PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 30(b)(6)

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff Fox News Network, LLC, requests that Defendant TVEyes, Inc. ("TVEyes") designate one or more officers, directors, managing agents, or other persons who consent to testify on TVEyes's behalf, who shall testify about information known or reasonably available to TVEyes relating to the topics listed below.

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  As used in these requests, the words set forth below shall be defined as follows:

1.      The term "ANSWER" means the Answer filed by TVEYES in this LITIGATION on October 15, 2013, and any amendments thereto.

2.      The terms "COMMUNICATED" and "COMMUNICATION(S)" should be interpreted in their broadest sense to include without limitation all oral or written communications, including any writings, emails, or other electronically stored information as that term is defined by Federal Rule of Civil Procedure 34(a).

3.      The term "COMPLAINT" means the Complaint filed by FOX NEWS in this LITIGATION on July 30, 2013, and any amendments thereto.

4.      The terms "CONCERNING" and "REFERRING OR RELATING TO" should be construed in the broadest possible sense to mean analyzing, citing, commenting upon, comprising, concerning, consisting of, constituting, containing, dealing with, describing, discussing, embodying, evidencing, identifying, involved with, mentioning, monitoring, referring to, reflecting, responding to, pertaining to, showing, stating, summarizing, or bearing any logical

or factual connection with the matter discussed, as these terms are understood in the broadest sense.

5.     The term "DOCUMENT(S)" means any written, printed, typed, recorded, or graphic matter, however produced, reproduced, or stored, including the originals and all non-identical copies, whether different from the originals by reason of any notations made on such copies or otherwise, in the actual or constructive possession, custody, or control of TVEYES, including without limitation contracts, letter agreements, records, correspondence, COMMUNICATIONS, electronically stored information, emails, tweets, blog or Internet forum posts or comments, text messages on portable devices, Blackberry Messenger messages, SMS messages, memoranda, handwritten notes, source code, source code comments, source repository logs, server logs, records or summaries of negotiations, records or summaries of interviews or conversations, audio or video recordings, copies of video games, all Internet-based media, photographs, corporate minutes, diaries, telephone logs, instant messaging logs, chat room logs, schedules, drawings, product storyboards, product mockups, statistical statements, work papers, disks, data cards, films, data processing files, charts, graphs, microfiche, microfilm, contracts, notices, reports, recitals, statements, worksheets, abstracts, resumes, summaries, jottings, market data, books, journals, ledgers, audits, maps, diagrams, research documents, newspapers, appointment books, desk calendars, project management charts (e.g., Gantt charts), task management records (e.g., to-do lists), expense reports, computer printout and other computer readable or electronic records, and all drafts or modifications thereof, and all non-identical copies of any such items.  Any such DOCUMENT with any sheet or part thereof bearing any marks, such as initials, stamped indices, comments or notations, or any character or characters, that are not part of the signed text or photographic reproduction thereof is to be considered as a

separate DOCUMENT.  Where there is any question about whether a tangible item otherwise described in these requests falls within the definition of "DOCUMENT(s)," such tangible item shall be produced.

6.      The term "FOX NEWS" refers to Plaintiff Fox News Network, LLC, and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on its behalf.

7.      The term "FOX NEWS WORKS" refers to the audiovisual works named in the Complaint and identified by copyright registration numbers PA 1-818-109, PA 1-818-110, PA 1-818-111, PA 1-818-112, PA 1-818-113, PA 1-818-114, PA 1-818-118, PA 1-818-120, PA 1-818-122, PAu 3-679-883, PAu 3-679-885, PAu 3-679-887, PAu 3-679-888, PAu 3-679-890, PAu 3-679-891, PAu 3-679-895, PAu 3-679-898, PAu 3-679-900, and PAu 3-679-902.

8.      The term "FOX NEWS CONTENT" means any and all audio, visual, and audiovisual content owned and telecast by FOX NEWS, including without limitation all content telecast on the Fox News Channel and the Fox Business Network (including without limitation the FOX NEWS WORKS).

9.      The term "LITIGATION" refers to the lawsuit filed by FOX NEWS against TVEYES in the United States District Court for the Southern District of New York with case number 13-cv-5315.

10.     The term "MOTION TO DISMISS" refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss Counts II and III of Plaintiff's Complaint, filed in this LITIGATION on September 16, 2013.

11.    The term "PERSON(S)" means any natural person, firm, corporation, partnership, group, association, governmental entity, or business entity.

12.    The term "TECHNICAL FUNCTIONING" means and refers to the technological and business processes that maintain, power, or otherwise enable the TVEYES SERVICE, including without limitation all underlying software, databases, servers, and other technology, and all supporting human-completed tasks, such as, but not limited to, data entry, file maintenance, or customer support activities.

13.    The term "TVEYES" refers to Defendant TVEyes, Inc. and any of its former or current parents, subsidiaries, predecessors, successors, affiliated entities, controlled entities, joint ventures, related entities, agents, attorneys, employees, interns, representatives, assigns, directors, or officers and all other PERSONS acting or purporting to act on its behalf, including, but not limited to, David Ives and Robert Bruder.

14.    The term "TVEYES SERVICE" means and refers to any and all services offered by TVEYES, including without limitation the service referred to as "Media Monitoring Suite" offered through TVEyes.com, through iOS apps, and compatible with iPhone, iPad, and Android apps.

15.    The words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of a request any PERSONS, COMMUNICATIONS, or DOCUMENTS which otherwise would not be brought within its scope.

16.    "Any" and "all" are mutually interchangeable and are meant to encompass each other.

17.    The singular includes the plural and vice versa.

- 4 -

18.     The past tense shall be construed to include the present tense and vice versa.

**<u>SUBJECT MATTER FOR TESTIMONY</u>**

1.     The formation of TVEYES, including without limitation the purposes for which TVEYES was created.

2.     The creation, development, and launch of the TVEYES SERVICE, including without limitation the following:

a.     The purposes for which the TVEYES SERVICE was created.

b.     Whether and how the purposes for which the TVEYES SERVICE have changed since its creation.

c.     Any changes in the products and services available through the TVEYES SERVICE since its creation.

d.     The creation, development, and launch of the TVEYES SERVICE iOS app.

e.     The terms and limitations of the agreement(s) between TVEYES and the users of the TVEYES SERVICE.

f.     The identity of competitors of the TVEYES SERVICE.

g.     The products and services offered by competitors of the TVEYES SERVICE, including without limitation the relative limitations or advantages of those products and services compared to the TVEYES SERVICE.

3.     The display, distribution, reproduction, or public performance of the FOX NEWS CONTENT, in whole or in part, through the TVEYES SERVICE, including without limitation the following:

a.      The decision to include the FOX NEWS CONTENT on the TVEYES SERVICE.

b.      TVEYES' intent in and reasons for including the FOX NEWS CONTENT on the TVEYES SERVICE.

c.      The specific manner in which the FOX NEWS CONTENT is copied and saved, or otherwise obtained and stored, by TVEYES and the TVEYES SERVICE.

d.      The agreement(s) with the cable or satellite services that provide the stream(s) from which TVEYES copies the telecasts of the FOX NEWS CONTENT.

e.      The amount of the FOX NEWS CONTENT (including without limitation the FOX NEWS WORKS) that is copied by TVEYES and the TVEYES SERVICE and the amount made available to TVEYES' users to search, view, read, stream, download, or edit.

f.      The delay, if any, between the FOX NEWS' telecast of the FOX NEWS CONTENT and the availability of that content on the TVEYES SERVICE.

g.      How TVEYES uses the FOX NEWS CONTENT, including without limitation the ability of TVEYES' users to search for, view, read, stream, download, or edit audiovisual, visual, or textual excerpts from the FOX NEWS CONTENT.

h.      The audio and visual quality of the FOX NEWS CONTENT made available on the TVEYES SERVICE, including without limitation any changes to that quality over time.

i.      Whether users can stream, download, or edit entire telecast episodes from the FOX NEWS CONTENT.

j.      The maximum consecutive length of the FOX NEWS CONTENT that users can stream or download.

k.      For the period from July 31, 2010 to July 30, 2013, the number of PERSONS who have viewed the FOX NEWS CONTENT (in whole or in part) through the TVEYES SERVICE.

l.      For the period from July 31, 2010 to July 30, 2013, the number of PERSONS who have streamed the FOX NEWS CONTENT (in whole or in part) through the TVEYES SERVICE.

m.      For the period from July 31, 2010 to July 30, 2013, the number of PERSONS who have downloaded the FOX NEWS CONTENT (in whole or in part) through the TVEYES SERVICE.

n.      For the period from July 31, 2010 to July 30, 2013, the number of PERSONS who have edited the FOX NEWS CONTENT (in whole or in part) through the TVEYES SERVICE.

o.      For the period from July 31, 2010 to July 30, 2013, the number of PERSONS who have accessed (other than by viewing, streaming, downloading, or editing) the FOX NEWS CONTENT (in whole or in part) through the TVEYES SERVICE.

p.      For the period from July 31, 2010 to July 30, 2013, the relative number of PERSONS who have viewed, streamed, downloaded, edited, or otherwise accessed the FOX NEWS CONTENT (in whole or in part) through the TVEYES SERVICE compared to the audiovisual content from other broadcast and cable television channels available on the TVEYES SERVICE, including without limitation CNN, MSNBC, and cNBC.

q.      For the period from July 31, 2010 to July 30, 2013, the number of PERSONS who have been redirected, connected, or introduced via the TVEYES SERVICE or TVEYES to the producer, owner, or licensing agent of any audio or audiovisual content made available on the TVEYES SERVICE.

4.      Subscribers to the TVEYES SERVICE, including without limitation the nature and purpose of the types of organizations and corporations that subscribe and the occupations of typical individual subscribers.

5.      COMMUNICATIONS between TVEYES and its users CONCERNING the TVEYES SERVICE, FOX NEWS, or the FOX NEWS CONTENT, including without limitation COMMUNICATIONS CONCERNING the following:

a.      The expressed reasons that users subscribe to the TVEYES SERVICE.

b.      The availability of the FOX NEWS CONTENT, in whole or in part, on the TVEYES SERVICE.

c.      The importance to any PERSON of the availability of the FOX NEWS CONTENT, in whole or in part, on the TVEYES SERVICE.

d.      Any PERSON's expressed urgency in obtaining or viewing audiovisual content, including without limitation the FOX NEWS CONTENT, in whole or in part, on the TVEYES SERVICE.

e.      TVEYES' or FOX NEWS' intellectual property or other proprietary rights in the audio or audiovisual content, including without limitation the FOX NEWS CONTENT, made available on the TVEYES SERVICE.

f.      Any authorized licensing agent of the FOX NEWS CONTENT, including without limitation ITN Source, Ltd.

- 8 -

       g.      Introducing, connecting, or directing any PERSON to the producer, owner, or licensing agent of any audio or audiovisual content, including without limitation the FOX NEWS CONTENT, made available on the TVEYES SERVICE.

       h.      Any PERSON's expressed belief that TVEYES is an authorized distributor or licensee of the FOX NEWS CONTENT.

       i.      This LITIGATION.

6.      Market research, branding strategies, or forecasts CONCERNING the TVEYES SERVICE or users of the TVEYES SERVICE.

7.      TVEYES' advertising, marketing, and promotion of the TVEYES SERVICE, including without limitation:

       a.      Advertising, marketing, and promotional expenditures CONCERNING the TVEYES SERVICE.

       b.      Any opinions expressed or assertions made about the TVEYES SERVICE in TVEYES' advertising, marketing, or promotional materials.

       c.      The opinions expressed on and COMMUNICATIONS CONCERNING the TVEYES blog, located at http://blog.tveyes.com/.

       d.      Advertising, marketing, or promotional materials REFERRING OR RELATING to FOX NEWS or the FOX NEWS CONTENT.

8.      TVEYES' past and present plans to monetize the TVEYES SERVICE, including without limitation the following:

       a.      The past, present, and intended future pricing plans for the TVEYES SERVICE.

       b.      TVEYES' past and present business plans.

c.      Any valuation or financial projection CONCERNING the TVEYES SERVICE.

d.      TVEYES' past and present plans to monetize the FOX NEWS CONTENT through the TVEYES SERVICE.

9.      TVEYES' revenues, expenses, and profits (both gross and net), including without limitation those attributable to the FOX NEWS CONTENT and each of the FOX NEWS WORKS.

10.      TVEYES' licensing of audiovisual and visual content to third parties, such as other media monitors, including without limitation the manner and extent of TVEYES' licensing and distribution of the FOX NEWS CONTENT to such parties.

11.      The market for and value of the FOX NEWS CONTENT on the TVEYES SERVICE, including without limitation each of the FOX NEWS WORKS individually.

12.      All COMMUNICATIONS between FOX NEWS and TVEYES, including without limitation the following:

a.      TVEYES' attempts to license the TVEYES SERVICE to FOX NEWS.

b.      TVEYES' attempts to license the FOX NEWS CONTENT for inclusion on the TVEYES SERVICE.

c.      Any COMMUNICATIONS understood by TVEYES to constitute FOX NEWS' authorization of TVEYES' use of the FOX NEWS CONTENT.

13.      All COMMUNICATIONS between TVEYES and authorized licensing agents of the FOX NEWS CONTENT, including without limitation ITN Source, Ltd.

14.      TVEYES' agreements to license audiovisual content from third parties for inclusion in the TVEYES SERVICE.

- 10 -

15.     Any claims that the TVEYES SERVICE infringed any PERSON's intellectual property or other proprietary rights.

16.     TVEYES' knowledge CONCERNING whether the TVEYES SERVICE infringes the intellectual property rights or other proprietary rights of FOX NEWS, including, but not limited to, any clearance memoranda and opinion letters of counsel or others.

17.     TVEYES' knowledge CONCERNING the availability of and advertising embedded within the FOX NEWS CONTENT, in whole or in part, on FOX NEWS' and authorized third-party websites, including without limitation FoxNews.com, FoxBusiness.com, Hulu.com, Yahoo.com, YouTube.com, and ITNSource.com.

18.     TVEYES' newsgathering activities and investments.

19.     TVEYES' knowledge CONCERNING FOX NEWS' newsgathering activities and investments.

20.     Each of TVEYES' allegations in the ANSWER including, but not limited to, the basis and factual support for each of TVEYES' alleged defenses, including without limitation the following:

    a.     The First Defense in the ANSWER that the COMPLAINT "fails to state a claim upon which relief can be granted."

    b.     The Second Defense in the ANSWER that FOX NEWS' "claims and/or the remedies sought are barred, in whole or in part, by the First Amendment to the United States Constitution and by the Constitution of the State of New York and other states."

    c.     The Third Defense in the ANSWER that FOX NEWS' "claims are barred, in whole or in part, by the doctrine of copyright fair use, 17 U.S.C. § 107, as well as any other applicable limitations on exclusive rights offered under the Copyright Act."

d.      The Fourth Defense in the ANSWER that "the Court lacks subject matter jurisdiction over claims to enforce copyrights for which Plaintiff has not obtained, or has not pleaded ownership of, validly issued copyright registrations."

e.      The Fifth Defense in the ANSWER that FOX NEWS' "claims are barred, in whole or in part, for lack of standing to the extent they are based on alleged infringement of works for which Plaintiff does not or did not own or control the exclusive right allegedly infringed at the time of infringement."

f.      The Sixth Defense in the ANSWER that FOX NEWS' "claims are barred, in whole or in part, to the extent they are based on alleged infringements of works for which (i) valid and enforceable copyright registration certificates do not exist and/or (ii) the relevant certificates contain materially false and/or inaccurate information relating to the nature, ownership of chain of title to the work."

g.      The Seventh Defense in the ANSWER that FOX NEWS' "claims are barred or subject to dismissal for failure to comply with renewal, notice and registration requirements, and with other necessary formalities."

h.      The Eighth Defense in the ANSWER that "[s]ome or all of the copyrights on which Plaintiff relies have been forfeited or abandoned."

i.      The Ninth Defense in the ANSWER that "[s]ome or all of Plaintiff's works or portions thereof are in the public domain."

j.      The Tenth Defense in the ANSWER that some or all of FOX NEWS' "claims are barred by the merger doctrine."

k.      The Eleventh Defense in the ANSWER that "[s]ome or all of Plaintiff's works or portions thereof are not original."

- 12 -

l.      The Twelfth Defense in the ANSWER that "[s]ome or all of Plaintiff's works or portions thereof constitute ideas, facts, procedures, processes, systems, methods, concepts, principles or discoveries not subject to protection by the Copyright Act."

m.      The Thirteenth Defense in the ANSWER that "[s]ome or all of Plaintiff's works or portions thereof constitute scenes a faire."

n.      The Fourteenth Defense in the ANSWER that some or all of FOX NEWS' "claims are barred because Plaintiff has engaged in copyright misuse," including without limitation the market power held by FOX NEWS in the FOX NEWS CONTENT and any anti-competitive conduct by FOX NEWS REFERRING OR RELATING TO the FOX NEWS CONTENT.

o.      The Fifteenth Defense in the ANSWER that some or all of FOX NEWS' "claims are barred by the doctrines of waiver, estoppel, laches or acquiescence."

p.      Any belief by TVEYES CONCERNING its right to use the FOX NEWS CONTENT or that its use of the FOX NEWS CONTENT was not objected to by FOX NEWS.

q.      TVEYES' knowledge that it was not authorized to use the FOX NEWS CONTENT.

r.      Any prejudice or injury to TVEYES as a result of any perceived delay by FOX NEWS in filing the COMPLAINT.

s.      The Sixteenth Defense in the ANSWER that some or all of FOX NEWS' "claims are barred by the doctrine of unclean hands."

t.      The Seventeenth Defense in the ANSWER that some or all of FOX NEWS' "claims are barred by the applicable statutes of limitation."

- 13 -

u.     The Eighteenth Defense in the ANSWER that some or all of FOX NEWS' "claims are preempted by the Copyright Act."

v.     The Nineteenth Defense in the ANSWER that FOX NEWS' "claims for statutory damages and attorney's fees are barred, in whole or in part, by the Copyright Act, 17 U.S.C. § 412."

w.     The Twentieth Defense in the ANSWER that some or all of FOX NEWS' "claims for damages are barred by the Copyright Act's territorial limitations and by the lack of subject matter jurisdiction over such extra-territorial claims in proceedings under the U.S. Copyright Act."

x.     The Twenty-First Defense in the ANSWER that FOX NEWS "is barred from obtaining monetary or injunctive relief because Plaintiff has suffered no injury or damage as a result of any act or conduct by TVEyes and TVEyes' revenues or profits are not attributable to its allegedly infringing conduct."

y.     The Twenty-Second Defense in the ANSWER that FOX NEWS' "damages, if any, are limited by TVEyes' innocent intent."

z.     Any advice received by TVEYES CONCERNING its use of third-party telecasts, including without limitation the FOX NEWS CONTENT, on the TVEYES SERVICE without authorization.

aa.    The Twenty-Third Defense in the ANSWER that FOX NEWS' "damages, if any, are limited to the extent that Plaintiff is not able to allege or prove facts sufficient to show that the alleged infringement was willful."

bb.     TVEYES' admission in Paragraph 36 of the ANSWER that TVEYES' "users are able to download and edit an unlimited number of short excerpts of content recorded by TVEyes in response to keyword and other queries."

cc.     TVEYES' admission in Paragraph 46 of the ANSWER that "certain limited features of TVEyes' service are also accessible to TVEyes subscribers via an iPhone app," including without limitation which features of the TVEYES SERVICE are (and which are not) accessible to subscribers via the iPhone app.

21.     Any fee arrangements in connection with this lawsuit, including without limitation the existence, nature and extent of any third-party funding of, contribution to, or reimbursement of fees, costs, or expenses in connection with this LITIGATION, including without limitation any insurance, indemnification, or similar agreement.

22.     The topics, subjects, witnesses, documents, damages, and insurance coverage discussed in TVEYES' Initial Disclosures, including any amendments thereto.

23.     TVEYES' DOCUMENT retention policies and practices, including but not limited to TVEYES' efforts to institute a litigation hold and to preserve DOCUMENTS in its possession, custody, or control for this LITIGATION.