REDACTED

Dale M. Cendali
Johanna Schmitt
Joshua L. Simmons
Felicity Kohn
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
johanna.schmitt@kirkland.com
joshua.simmons@kirkland.com
felicity.kohn@kirkland.com

*Attorneys for Plaintiff Fox News Network, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOX NEWS NETWORK, LLC, | Case No.  1:13-cv-05315-AKH |
| Plaintiff, | ECF Case |
| - against - | |
| TVEYES INC., | |
| Defendant. | |

**PLAINTIFF FOX NEWS NETWORK, LLC'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT TVEYES, INC'S
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND ...............................................................................3

ARGUMENT .......................................................................................................4

I.    TVEYES CANNOT MEET ITS BURDEN OF ESTABLISHING ITS
      FAIR USE DEFENSE ...............................................................................4

      A.    Factor One: TVEyes' Use Is Commercial, in Bad Faith,
            Not Transformative, and Contrary to the Public Interest...........6

      B.    Factor Two: The Registered Works Are Creative and Expressive ...........20

      C.    Factor Three: TVEyes Copied the Registered Works in Their
            Entirety...................................................................................22

      D.    Factor Four: TVEyes' Use Harms the Market for and the Value of
            the Registered Works ..............................................................24

II.   TVEYES IS LIABLE FOR HOT NEWS MISAPPROPRIATION AND
      FOX NEWS' CLAIM IS NOT PREEMPTED.......................................36

      A.    TVEyes Has Misappropriated Fox News' Time-Sensitive "Hot
            News".......................................................................................37

      B.    TVEyes Free-Rides on Fox News' Information Gathering Efforts...........42

      C.    TVEyes' Appropriation of Fox News' News Is a Threat to Fox
            News' Newsgathering Activities ..............................................45

      D.    TVEyes' Services Directly Compete with Fox News' Services...............47

      E.    Fox News' Hot News Misappropriation Claim Is Not Preempted ...........49

III.  FOX NEWS HAS ESTABLISHED ITS MISAPPROPRIATION CLAIM
      AND TVEYES' PREEMPTION DEFENSE FAILS. ...........................50

      A.    Fox News Has Established Its Misappropriation Claim...........51

      B.    TVEyes' Preemption Defense Fails...........................................55

CONCLUSION ..................................................................................................57

## TABLE OF AUTHORITIES

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1995) ......................................................................... 7, 8, 9, 12

*Associated Press v. All Headline News Corp.*,
  608 F. Supp. 2d 454 (S.D.N.Y. 2009) ................................................................. 49

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
  931 F. Supp. 2d 537 (S.D.N.Y. 2013) ............................................................ passim

*Authors Guild, Inc. v. Google Inc.*
  954 F. Supp. 2d 282 (S.D.N.Y. 2013) ............................................................ passim

*Authors Guild, Inc. v. HathiTrust*,
  No. 12-4547, 2014 WL 2576342 (2d Cir. June 10, 2014) ................................ passim

*BanxCorp v. Costco Wholesale Corp.*,
  723 F. Supp. 2d 596 (S.D.N.Y. 2010) ...................................................... 41, 42, 49

*Barclays Capital, Inc. v. Theflyonthewall.com, Inc.*,
  650 F.3d 876 (2d Cir. 2011) ........................................................................... passim

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006) ................................................................................. 16

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006) ................................................................................... 9

*Cablevision Sys. Dev. Co. v. MPAA*,
  836 F.2d 599 (D.C. Cir. 1988) ............................................................................. 25

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ....................................................................... 7, 11, 24, 29

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
  262 F. Supp. 2d 204 (S.D.N.Y. 2003) .................................................................. 42

*Castle Rock Entm't, Inc. v. Carol Publ'g. Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ................................................................... 17, 23, 29

*Computer Assocs. Int'l v. Altai, Inc.*,
  982 F.2d 693 (2d Cir. 1992) ................................................................................. 56

*Davis v. Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001) ........................................................................... passim

*Demetriades v. Kaufmann*,
  698 F. Supp. 521 (S.D.N.Y. 1988) ...................................................................... 56

*Dior v. Milton*,
  155 N.Y.S.2d 443 (N.Y. Sup. 1956) ................................................................... 53

*Durham Indus., Inc. v. Tomy Corp.*,
  630 F.2d 905 (2d Cir. 1980) ................................................................................. 56

*Eldred v. Ashcroft,*
    537 U.S. 186 (2003) ................................................................................. 18

*Eyal R.D. Corp. v. Jewelex New York Ltd.,*
    784 F. Supp. 2d 441 (S.D.N.Y. 2011) ................................................. 55, 56

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) ................................................................................. 21

*Fin. Info., Inc. v. Moody's Investors Serv., Inc.,*
    751 F.2d 501 (2d Cir. 1984) ..................................................................... 35

*Forest Park Pictures v. Universal Television Network, Inc.,*
    683 F.3d 424 (2d Cir. 2012) ..................................................................... 56

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,*
    No. 96 Civ. 1103, 1996 WL 724734 (S.D.N.Y. Dec. 17, 1996) ............. 57

*Georgia Malone & Co. v. Rieder,*
    19 N.Y.3d 511 (2012) ............................................................................... 51

*Getty Petroleum Corp. v. Island Transp. Corp.,*
    878 F.2d 650 (2d Cir. 1989) ..................................................................... 54

*Gucci Am., Inc. v. Action Activewear, Inc.,*
    759 F. Supp. 1060 (S.D.N.Y. 1991) ......................................................... 54

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.,*
    879 F.2d 1005 (2d Cir. 1989) ................................................................... 51

*Hall v. Bed Bath & Beyond, Inc.,*
    705 F.3d 1357 (Fed. Cir. 2013) ........................................................... 51, 52

*Harper & Row, Publishers, Inc. v. Nation Enters.,*
    471 U.S. 539 (1985) ........................................................................... passim

*Hicks v. State,*
    674 A.2d 55 (Md. 1996) ............................................................................ 50

*Infinity Broad. Corp. v. Kirkwood,*
    150 F.3d 104 (2d Cir. 1998) ............................................................... passim

*Int'l News Serv. v. Associated Press,*
    248 U.S. 215 (1918) ....................................................................... 37, 41, 44

*Kelly v. Arriba Soft Corp.,*
    336 F.3d 811 (9th Cir. 2002) ................................................... 12, 17, 19, 21

*LinkCo, Inc. v. Fujitsu Ltd.,*
    230 F. Supp. 2d 492 (S.D.N.Y. 2002) ...................................................... 52

*Lone Wolf McQuade Assocs. v. CBS Inc.,*
    961 F. Supp. 587 (S.D.N.Y. 1997) ........................................................... 57

*Los Angeles News Service v. Reuters Television Int'l, Ltd.,*
    149 F.3d 987 (9th Cir. 1998) ................................................................. 5, 6

*Los Angeles News Service v. Tullo*,
   973 F.2d 791 (9th Cir. 1992) ................................................................. 5, 6, 35

*Microban Prods. Co. v. API Indus., Inc.*,
   No. 14 Civ. 41, 2014 WL 1856471 (S.D.N.Y. May 8, 2014) ................................ 55

*Miller v. Schloss*,
   218 N.Y. 400 (1916) .......................................................................... 51

*Nash v. CBS, Inc.*,
   704 F. Supp. 823, 834–35 (N.D. Ill. 1989) ...................................... 50, 57

*Nash v. CBS, Inc.*,
   899 F.2d 1537 (7th Cir. 1990).................................................................. 50

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997)........................................................... passim

*New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*,
   904 F.2d 152 (2d Cir. 1990)....................................................................... 10

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*,
   166 F.3d 65 (2d Cir. 1999)....................................................... 4, 12, 35

*NXIVM Corp. v. Ross Institute*,
   364 F.3d 471 (2d Cir. 2004)................................................................... 7, 10

*Pac. & S. Co. v. Duncan*,
   744 F.2d 1490 (11th Cir. 1984).................................................................... 5

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007)................................................... 12, 17, 19

*Pollstar v. Gigmania Ltd.*,
   No. 00 Civ. 5671, 2000 WL 34016436 (E.D. Cal. Sep. 1, 2000) ...................... 43, 47

*Ringgold v. Black Entm't Television, Inc.*,
   126 F.3d 70 (2d Cir. 1997)................................................................. 6, 13, 33

*Robert I. Gluck, M.D., LLC v. Kenneth M. Kamler, M.D., LLC*,
   905 N.Y.S.2d 232 (N.Y. App. 2010)............................................................. 52

*Rogers v. Koons*,
   960 F.2d 301 (2d Cir. 1992)........................................................................ 8

*Roy Exp. Co. v. Columbia Broad. Sys. Inc.*,
   503 F. Supp. 1137 (S.D.N.Y. 1980)...................................................... 10, 11, 53

*Roy Exp. Co. v. Columbia Broad. Sys. Inc.*,
   672 F.2d 1095 (2d Cir. 1982)............................................................ 11, 51, 52

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010)......................................................................... 15

*Salinger v. Colting*,
   641 F. Supp. 2d 250 (S.D.N.Y. 2009) ........................................................... 14

*Samara Bros. Inc. v. Wal-Mart Stores,*
  165 F.3d 120 (2d Cir. 1998) ..................................................................... 57

*Silver v. Lavendeira,*
  No. 08 Civ. 6522, 2009 WL 513031 (S.D.N.Y. Feb. 26, 2009) ............................ 42

*Sokol Holdings, Inc. v. BMB Munai, Inc.,*
  726 F. Supp. 2d 291 (S.D.N.Y. 2010) ........................................................ 52

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417 (1984) ........................................................................ 8, 24

*Sparaco v. Lawler, Matusky, Skelly, Engineers LLP,*
  303 F.3d 460 (2d Cir. 2002) .................................................................. 21

*Speedry Prods., Inc. v. Dri Mark Prods., Inc.,*
  271 F.2d 646 (2d Cir. 1959) .................................................................. 51

*Stadt v. Fox News Network LLC,*
  719 F. Supp. 2d 312 (S.D.N.Y. 2010) ........................................................ 57

*Standard & Poor's Corp. v. Commodity Exchange, Inc.,*
  683 F.2d 704 (2d Cir. 1982) ........................................................ 49, 52, 56

*Stewart v. Abend,*
  495 U.S. 207 (1990) ...................................................................... 8, 21, 23

*Swatch Grp. Mngm't Servs. Ltd. v. Bloomberg L.P.,*
  861 F. Supp. 2d 336 (S.D.N.Y. 2012) ................................................... passim

*Swatch Grp. Mngm't Servs. Ltd. v. Bloomberg L.P.,*
  No. 12-2412, 2014 WL 2219162 (2d Cir. May 30, 2014) ............................... passim

*Taggart v. WMAQ Channel 5 Chi.,*
  No. 00 Civ. 4205, 2000 WL 1923322 (S.D. Ill. Oct. 30, 2000) ............................ 22

*Triboro Quilt Mfg. Corp. v. Luve LLC,*
  No. 10 Civ. 3604, 2014 WL 1508606 (S.D.N.Y. Mar. 18, 2014) ........................... 55

*Twentieth Century Sporting Club, Inc. v. Transradio Press Service, Inc.,*
  300 N.Y.S. 159 (N.Y. Sup. 1937) ............................................................. 49

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.,*
  996 F.2d 1366 (2d Cir. 1993) .............................................................. 29, 35

*UMG Recordings, Inc. v. MP3.Com, Inc.,*
  92 F. Supp. 2d 349 (S.D.N.Y. 2000) ...................................................... 8, 12, 20

*United States v. ASCAP,*
  599 F. Supp. 2d 415 (S.D.N.Y. 2009) ................................................ 8, 20, 22, 29

*Vanderhye v. iParadigms, LLC,*
  562 F.3d 630 (4th Cir. 2009) .......................................................... 8, 22, 23

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,*
  342 F.3d 191 (3d Cir. 2003) ................................................................... 5

*Wainwright Secs. Inc. v. Wall St. Transcript Corp.*,
 558 F.2d 91 (2d Cir. 1977) ................................................................................... 26, 35

*Walker v. Time Life Films, Inc.*,
 784 F.2d 44 (2d Cir. 1986) ........................................................................................... 56

*Warner Bros. Entm't Inc. v. RDR Books*,
 575 F. Supp. 2d 513 (S.D.N.Y. 2008) ..................................................................... 17, 23

*Weissmann v. Freeman*,
 868 F.2d 1313 (2d Cir. 1989) ........................................................................... 11, 21, 22

*WPIX , Inc. v. ivi, Inc.*,
 691 F.3d 275 (2d Cir. 2012) ................................................................................. passim

*X17 v. Lavendeira*,
 563 F. Supp. 2d 1102 (C.D. Cal. 2007) ...................................................................... 50

**Statutes**

17 U.S.C. § 102 ................................................................................................................ 56

17 U.S.C. § 107 ........................................................................................................ passim

**Other Authorities**

NIMMER ON COPYRIGHT § 1.01 ............................................................................ 50, 56, 57

CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

## PRELIMINARY STATEMENT

In its opening brief, TVEyes attempts to portray its service as nothing more than a "research tool" that indexes words that are spoken on television. This is an obvious attempt at revisionist history in a transparent (and desperate) effort to shoehorn TVEyes into the facts of the Second Circuit's recent *HathiTrust* decision, in which a search engine for books that made <u>no</u> copyrighted content available to its users was held to be a fair use.

TVEyes, however, cannot change the fact that its service far exceeds the use of content that was deemed fair in all of the cases it cites. The undisputed evidence shows that, 24 hours a day, seven days a week, TVEyes records verbatim the entirety of Fox News' telecasts and then provides its subscribers with a limitless supply of "high definition" video clips of that content to watch, download, edit, and share. TVEyes does not even create the closed captioning that is used in its database; rather, it copies it from Fox News, which creates it at great expense. Moreover, conspicuously absent from TVEyes' brief is any mention of its marketing materials, which reveal the true nature of its service by touting it to potential subscribers as making TVEyes' recorded content available so that they can "watch live TV, 24/7" and "monitor Breaking News" without any blackouts and "download unlimited clips" that can be edited, archived, and shared in boundless ways. TVEyes also fails to mention that ████████ video clips of Fox News' content have been played and over ████ Fox News clips have been downloaded using TVEyes' service. TVEyes provides far more than a word index of Fox News' telecasts; its service substitutes for and competes with Fox News' content outlets by allowing TVEyes' subscribers to watch television and download video clips.

Accordingly, TVEyes' motion for summary judgment is without merit. ***First***, TVEyes cannot meet its burden of establishing its affirmative defense of fair use. As the foregoing undisputed facts expose TVEyes as a media clipping service, three decades of caselaw in the

Second Circuit and other courts militates against a finding in TVEyes' favor.  Moreover, TVEyes admittedly is a for-profit company that makes the majority of its revenues through the sale of copyrighted content, and numerous cases have held similar wholesale reproductions by similar media clipping services to be mere superseding uses and not transformative.  Further, TVEyes is a classic bad faith actor as its service violates the very cable subscription agreements that give it access to Fox News' content, and TVEyes has failed to cease using Fox News' content despite repeatedly representing that it would do so.  Additionally, as discussed below, TVEyes' continued, unfettered use of Fox News' content without authorization from or compensation to Fox News—particularly if such use becomes widespread—will ruin the revenue streams that Fox News relies on to offset the considerable costs of its newsgathering and reporting efforts by diverting viewers away from Fox News' authorized forms of distribution.  Thus, the weight of authority supports finding that TVEyes' service is not a fair use.

In an effort to deflect attention from its unrestrained use of Fox News' content, TVEyes asserts that Fox News seeks, through this lawsuit, to "establish exclusive control over the news content it broadcasts."  TVEyes Br. 1.  That simply is not the case.  Fox News' telecasts are publicly distributed by its affiliates, its websites, and its clip licensing agent.  As a result, there is no shortage of access to Fox News' content or critical commentary supporting and critiquing Fox News without the need for a for-profit company, like TVEyes, to leach away Fox News' viewership and revenues.

**_Second_**, TVEyes tries to evade liability for hot news misappropriation by arguing that it merely "reports" on what Fox News does.  TVEyes' attempt to recast itself, however, is directly contradicted by its own marketing materials, which promote its service as a way to "monitor Breaking News."  Clearly, this is a quintessential case of hot news misappropriation.  TVEyes does not dispute that Fox News expends considerable effort and expense to gather and report

time-sensitive news as it happens, 24 hours a day, 365 days a year.  There similarly is no dispute that TVEyes employs no journalists and makes no similar expenditures, but rather merely copies and redistributes all of Fox News' news reports to its subscribers for a fee as soon as they air.  As a result of its free riding, TVEyes has created a service that directly competes with Fox News' own news reports.  If TVEyes' use became widespread, Fox News' ability and incentives to continue its newsgathering efforts would be threatened.  Lastly, it is well-settled that a claim for hot news misappropriation is recognized under New York law and not preempted by copyright law and, thus, TVEyes has not met its burden on its preemption defense.

*Third*, TVEyes cannot show that summary judgment in its favor is warranted on Fox News' misappropriation claim.  TVEyes directly competes with Fox News by misappropriating the results of Fox News' labor, skill, and expenditures—namely, the distribution system Fox News carefully has negotiated with its affiliates—and misleads the public to believe that its service is authorized by Fox News and other copyright owners.  As it is enriched by its bad faith conduct at Fox News' expense, TVEyes has committed common law misappropriation in a manner that is not preempted by the Copyright Act or duplicative of its hot news claim.

The parties do not dispute the services TVEyes provides, but TVEyes' characterization of those services contradicts its own marketing materials and its executives' deposition testimony.  In light of TVEyes' undisputed and unrestrained use of Fox News' content, news, and distribution system, Fox News can establish each of its claims, and TVEyes' motion for summary judgment is revealed to be baseless.  Fox News respectfully requests that TVEyes' motion be denied and Fox News' motion for summary judgment be granted.

## FACTUAL BACKGROUND

For the factual background of its opposition, Fox News respectfully refers the Court to its memorandum of law in support of its motion for summary judgment ("Fox News' opening brief"

or "Fox News Br."). Fox News Br. 5–24.[1]

## ARGUMENT

The parties agree on the material facts related to Fox News' business and TVEyes' use of Fox News' content; the only dispute is their legal significance. In light of these undisputed facts, TVEyes' motion for summary judgment is meritless, and Fox News respectfully requests that its motion for summary judgment be granted. First, TVEyes cannot meet its burden to establish the affirmative defense of fair use. *See infra* Part I. Second, Fox News has established the elements of its hot news misappropriation claim, which is not preempted by the Copyright Act. *See infra* Part II. Finally, Fox News has shown that TVEyes has misappropriated the results of Fox News' labor, skill, and expenditures in bad faith and has deceived consumers, and that TVEyes cannot meet its burden to show that this claim is preempted. *See infra* Part III.

## I.   TVEYES CANNOT MEET ITS BURDEN OF ESTABLISHING ITS FAIR USE DEFENSE

This Court has recognized that, as the party asserting fair use, TVEyes "has the burden of proving that its use was fair." *See Swatch Grp. Mngm't Servs. Ltd. v. Bloomberg L.P.*, 861 F. Supp. 2d 336, 339 (S.D.N.Y. 2012) (Hellerstein, J.), *aff'd*, No. 12-2412, 2014 WL 2219162 (2d Cir. May 30, 2014). As detailed below and in Fox News' opening brief, TVEyes cannot meet its burden or establish that any fair use factor weighs in its favor. Fox News Br. 26–44.

TVEyes' fair use argument is glaringly deficient in three threshold respects. ***First***, it wholly ignores thirty years of precedent in the Second Circuit and numerous other courts holding that for-profit media clipping services (like TVEyes) do not qualify for the fair use defense. *See Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65, 72 (2d Cir. 1999); *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 112 (2d Cir. 1998); *Associated Press v.*

---

[1]   Fox News also incorporates by reference the declarations that it submitted in support of its motion for summary judgment. In addition, capitalized terms not defined here are defined in Fox News' opening brief.

*Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 553 (S.D.N.Y. 2013); *see also Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 199, 203 (3d Cir. 2003); *Los Angeles News Service v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990, 994–95 (9th Cir. 1998); *Los Angeles News Service v. Tullo*, 973 F.2d 791, 792, 797, 799 (9th Cir. 1992); *Pac. & S. Co. v. Duncan*, 744 F.2d 1490, 1493, 1498 (11th Cir. 1984).  TVEyes is well-aware of this caselaw as Fox News cited it in its April 16, 2013 cease and desist letter and throughout this litigation.  Compl. (Dkt. No. 1) Ex. B.  TVEyes' avoidance of this critical issue is a tacit admission that its use of Fox News' Registered Works does not constitute fair use.

 *Second*, TVEyes attempts to minimize the impact of its use by solely focusing on its own conduct and by omitting any consideration of what would happen if its use became widespread.  As TVEyes admits, however, in assessing fair use, courts "consider whether 'unrestricted and widespread conduct of the sort engaged in by [the defendant] would result in a substantially adverse impact on the potential market for the original work."  TVEyes Br. 44 (quoting *Swatch*, 2014 WL 2219162, at *14).  Here, as discussed below, the evidence clearly shows that widespread use similar to TVEyes' would undermine Fox News' entire business model, resulting in the loss of revenues required to offset the tremendous cost of Fox News' extensive newsgathering and reporting.  *See infra* 32.  TVEyes cites no contrary evidence.

 *Third*, TVEyes tries to excuse its wholesale copying of Fox News' content by asserting that its subscribers use its service in a manner that constitutes fair use.  TVEyes' assertion, however, is largely speculative.[2]  For example, TVEyes asserts that the "United States Army uses TVEyes . . . to ensure national security and safety of troops" with nothing more than the bald statement of TVEyes' CEO to support this claim.  TVEyes' Statement of Undisputed

---

[2] While TVEyes makes conslusory statements about theoretical ways its subscribers <u>might</u> use its service, the facts show that TVEyes' system is not restricted to or marketed for such uses.  Fox News Br. 18–22.  Rather, TVEyes' system and its marketing materials emphasize the availability of unlimited high definition video clips of Fox News' content that its users can watch, download, and edit in real time.  *Id.*

Material Facts Pursuant to Local Rule 56.1 ("TV SUF") ¶ 49.  Moreover, as this Court explained

when TVEyes made the same argument during the parties' April 7, 2014 court conference, the

law is clear that a defendant cannot rely on the activities of its subscribers to support a fair use

defense.  Simmons Decl. Ex. 71 (Discovery Hr'g Tr. 27:2–16); *see also Infinity Broad.*, 150 F.3d

at 108 ("[I]t is [the defendant's] own retransmission of the broadcasts, not the acts of his end-

users, that is at issue here and all [he] does is sell access to unaltered radio broadcasts.");

*Reuters*, 149 F.3d at 994 (holding that media clipping service could not rely on its subscribers'

use to support a fair use finding); *Tullo*, 973 F.2d at 797 (holding that "the ultimate use to which

the customer puts the tape is irrelevant, as is the use [its] customers make of the tapes [it] sells").

    For these reasons and the additional reasons detailed below, TVEyes has not met its

burden of establishing fair use and, thus, its motion for summary judgment should be denied.

> ### A.    Factor One: TVEyes' Use Is Commercial, in Bad Faith, Not Transformative, and Contrary to the Public Interest

    The first fair use factor is "the purpose and character of the use, including whether such

use is of a commercial nature or is for nonprofit educational purposes."  17 U.S.C. § 107(1) .

    As an initial matter, TVEyes asserts that it is entitled to a presumption on this factor

because it "fits comfortably within the illustrative guide of fair uses" in the fair use statute's

preamble.  TVEyes Br. 29.  While there is no dispute that "reproduction . . . for purposes such as

criticism, comment, news reporting, teaching . . . , scholarship, or research" constitutes fair use,

17 U.S.C. § 107, TVEyes' use is "not remotely similar to any of the listed categories."  *Ringgold*

*v. Black Entm't Television, Inc.*, 126 F.3d 70, 78 (2d Cir. 1997) (finding use outside of categories

not to be transformative).  TVEyes admits that it does not criticize or comment on the Registered

Works and that it is neither a newsgathering organization nor in the business of gathering or

reporting the news.  TVEyes Br. 15; FX SUF ¶ 288; Fox News' Counter-Statement of Material

CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

Facts ("FX CSUF") ¶¶ 3–4.  Similarly, TVEyes' use does not constitute scholarship, research, or

a method of teaching.  Instead, TVEyes reproduced the Registered Works unchanged, without

any commentary, expression, meaning, message, or anything else that possibly could be

considered transformative.  FX SUF ¶¶ 151, 168, 170–71, 177–81, 188–90, 198–99.  Moreover,

as discussed above, the uses of the Registered Works that TVEyes' subscribers might

theoretically make with TVEyes' system are irrelevant to a fair use analysis.  *See supra* 6.  Thus,

TVEyes' service is nothing like the critical analysis performed by the defendant in the case cited

by TVEyes.  *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 475, 477 (2d Cir. 2004) (finding

report that criticized "Executive Success" manual made fair use of quoted material).[3]

Further, as discussed below, this first fair use factor weighs in Fox News' favor because

(1) TVEyes is a for profit company that admittedly "permits ***only*** commercial use," TVEyes Br.

48 (emphasis in original); (2) TVEyes has acted in bad faith; (3) TVEyes' use supersedes Fox

News' use of the Registered Works; and (4) the public interest favors protecting news

organizations, like Fox News.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

        1.    <u>TVEyes Admits that its Use of the Registered Works is Highly
Commercial</u>

TVEyes admits that it is a for-profit, commercial enterprise that admittedly "charges a

flat fee of $500 a month" for access to its system, TVEyes Br. 37, and "permits ***only*** commercial

use."  *Id.* at 48 (emphasis in original); Fox News Br. 28–29; FX SUF ¶¶ 227–28, 230–32, 235.

In fact, in 2013 alone it received over ████████ in revenues from user subscriptions and fees

paid by its Sale Partners.  FX SUF ¶¶ 227–28, 230–32, 235.  Thus, this factor heavily weighs

against fair use.  *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1995)

(stating that "courts will not sustain a claimed defense of fair use when the secondary use can

---

[3]    No such presumption was applied in *Authors Guild, Inc. v. Google Inc.* to which TVEyes also cited.  954 F.
Supp. 2d 282, 291 (S.D.N.Y. 2013).

fairly be characterized as a form of 'commercial exploitation'"); s*ee also Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (commercial use of copyrighted material is presumptively unfair); *Rogers v. Koons*, 960 F.2d 301, 309 (2d Cir. 1992) (defendant's "substantial profit from . . . intentionally exploitive use of . . . work" weighed against fair use); *United States v. ASCAP*, 599 F. Supp. 2d 415, 425–26 (S.D.N.Y. 2009) (use of audio clips to facilitate commercial sales weighed against fair use); *UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 351 (S.D.N.Y. 2000) (finding that use of copyrighted content to make a profit constitutes commercial use and weighs against finding of fair use).[4]

While it admits that this Court should consider the commercial nature of its use of the Registered Works, TVEyes unpersuasively argues that this factor should be given less weight. TVEyes Br. 36.  The opposite, in fact, is true.  Because, as discussed below, TVEyes makes a quintessential superseding use of Fox News' content, *see infra* 11, its use is not transformative and, thus, its commercial use, as well as its bad faith, "takes on a heightened importance." *ASCAP*, 599 F. Supp. 2d at 428 (citing *Davis v. Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. 2001)).

TVEyes also argues that its revenues are not "a ***direct consequence*** of copying the original work."  TVEyes Br. 37 (emphasis in original; quoting *Texaco*, 60 F.3d at 921).  This is nonsensical as TVEyes' revenues clearly are directly attributable to its copying of Fox News' content, including the Registered Works, 24 hours a day, seven days a week and its redistribution of that content to its subscribers in real time.  FX SUF ¶¶ 151, 227–28, 230–32, 235; TV SUF ¶ 13.  As this is the entire thrust of its marketing efforts, it hardly is peripheral to its business;

---

[4]    Cases cited by TVEyes also support this proposition.  *Stewart v. Abend*, 495 U.S. 207, 237 (1990) ("Every unauthorized commercial use of copyright material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." (alterations omitted)); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449 (1984) (finding use of "copies for a commercial or profit-making purpose . . . would presumptively be unfair."); *A.V. ex. rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 638 (4th Cir. 2009) ("A use of the copyrighted material that has a commercial purpose tends to weigh against a finding of fair use." (internal quotation marks omitted)).

CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

rather, it is TVEyes' central business. *Id.* ¶¶ 168, 173–75, 177, 189, 191, 193–94, 200. Moreover, TVEyes admits that Fox News' channels are important to its service, with FNC among the top three most viewed and downloaded and FBN in the top 10. *Id.* ¶¶ 210–12, 221–22. In fact, almos ███████ video clips of Fox News' content that have been viewed on TVEyes' service, representing over ████ of the total content viewed on TVEyes' system. *Id.* ¶ 223–24. Furthermore, ██████ clips of Fox News content have been downloaded through TVEyes' service, including 500 clips from the nineteen Registered Works alone.[5] *Id.* ¶¶ 225–26.

Given that TVEyes clearly is selling and marketing Fox News' content (including the Registered Works) and the ability of its subscribers to watch, download, and edit that content in real time, FX SUF ¶¶ 210–26, TVEyes' reliance on cases in which defendants' profits came from sources wholly unrelated to the copying of the copyrighted works is misplaced. *Texaco*, 60 F.3d at 922 (photocopying was not fair use despite finding "copying, at most, merely facilitated . . . research that might have led to the production of commercially valuable products"); *Google*, 954 F. Supp. 2d at 291–92 (Google made its service available for free without advertising on pages containing the plaintiff's content); *see also Swatch*, 2014 WL 2219162, at *7 (finding dissemination of sound recordings was only a small part of service and defendant only provided one recording of plaintiff's content).[6]

---

[5]  TVEyes attempts to minimize the commerciality of its service by focusing on the number of viewings of the nineteen representative Registered Works as compared to all of the content on TVEyes' service, TVEyes Br. 38, but TVEyes does not deny that it copies and makes available all of Fox News' content or that Fox News' content is among the most viewed and downloaded. FX SUF ¶¶ 147, 149, 151.

[6]  TVEyes argues that its service's claimed public benefits outweigh its commercial use. TVEyes Br. 38. As discussed below, however, the public interest favors Fox News. *See infra* 17. Moreover, TVEyes cites no case in which a court ignored such brazen, direct commercial use due to claimed public benefits. *Texaco*, 60 F.3d at 922 ("The greater the private economic rewards reaped by the secondary user . . . the more likely the first factor will favor the copyright holder and the less likely the use will be considered fair."); *see Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006) ("[C]ommercialism of the use by the secondary user of the original is . . . relevant to the inquiry . . . ."); *Google*, 954 F. Supp. 2d at 291–92 (commercial benefit must be considered).

2.      TVEyes Used the Registered Works In Bad Faith

TVEyes disingenuously attempts to downplay the relevance of the bad faith subfactor. TVEyes Br. 38 n.10.  Yet, even cases that TVEyes cites in its opening brief consider a defendant's bad faith and find "the propriety of a defendant's conduct . . . is an integral part of the analysis under the first factor."  *NXIVM*, 364 F.3d at 478 (finding district court erred by failing to consider bad faith subfactor); *see New Era Publ'ns Int'l, ApS v. Carol Publ'g Grp.*, 904 F.2d 152, 160 (2d Cir. 1990) (finding that "bad faith by the user of copyrighted material . . . suggests unfairness"); *Swatch* 861 F. Supp. 2d at 340 (crediting "Plaintiff's allegations that Defendant was not authorized to access the Earnings Call and that Defendant's publication of the Infringing Work violated the directive regarding publication of a recording of the Earnings Call"), *aff'd*, 2014 WL 2219162, at *7 (considering defendant's bad faith).

In *Harper & Row*, the Supreme Court held that it is bad faith (and thus not fair use) for a defendant to obtain a copyrighted work illicitly.  471 U.S. at 563; *see NXIVM*, 364 F.3d at 478 (holding that it is bad faith to use a work knowing access was unauthorized or was "derived from a violation of law or breach of duty" and only finding fair use due to defendant's critical analysis of quoted material).  Here, TVEyes accessed the Registered Works through ordinary cable subscriptions that specifically prohibit the copying and redistribution of Fox News' content.  *See* Fox News Br. 18.  As a result, TVEyes' use violates the agreements through which it gains access to Fox News' content, which is the epitome of bad faith.  FX SUF ¶¶ 152–56, 159.[7]

TVEyes' bad faith is further evidenced by its admitted copying and use of Fox News' content after Fox News made repeated demands that TVEyes stop offering it as part of its service.  FX SUF ¶ 253; *Roy Exp. Co. v. Columbia Broad. Sys. Inc.*, 503 F. Supp. 1137, 1146–47

---

[7]      TVEyes cites *Swatch* in support of its argument, but that case merely noted that unauthorized disclosure may be permissible for members of the news media for purposes of news reporting. 2014 WL 2219162, at *7. TVEyes, however, is not in the business of newsgathering or reporting.  FX SUF ¶ 288.

(S.D.N.Y. 1980), *aff'd*, 672 F.2d 1095, 1105 (2d Cir. 1982); TVEyes Br. 38 n.10 (admitting

"TVEyes' awareness that Fox [News] did not wish for its content to be captured").[8]  TVEyes'

failure to follow through on its repeated representations that it would take down Fox News'

content also underscores its bad faith.  FX SUF ¶ 254.

TVEyes' bad faith also is shown by its use of the Registered Works without a license,

which violates its own stated practice of obtaining licenses from content owners (such as

████████████  to use their content on its system.  *Roy Exp.*, 503 F. Supp. at 1146–47; FX SUF ¶¶

238–41, 248, 245; *id.* ¶ 248 (representing to content holders that "[i]t is certainly not the practice

of TVEyes to operate without any necessary agreement being in place").  TVEyes does nothing

to inform its subscribers that its use of Fox News' content is unauthorized.  To the contrary, it

touts the availability of Fox News' content, and the evidence shows that its customers have been

led to believe by TVEyes that video clips downloaded from the TVEyes service are licensed for

use on internal and external websites.  FX SUF ¶¶ 255–59.  TVEyes' bad faith is further shown

by its violation of the accepted practice of other media clipping services to license the right to

include content on their services.  *Roy Exp.*, 503 F. Supp. at 1146–47; FX SUF ¶¶ 249–50.

Accordingly, TVEyes' use of the Registered Works in bad faith further militates against

fair use.  *Harper & Row*, 471 U.S. at 562; *Weissmann v. Freeman*, 868 F.2d 1313, 1323 (2d Cir.

1989); *Meltwater*, 931 F. Supp. 2d at 552.

> 3.  TVEyes' Use of the Registered Works Is Not Transformative as TVEyes'
>     Media Clipping Service Merely Supersedes Fox News' Use

As TVEyes acknowledges, to be considered transformative, its use of the Registered

Works must "add[] something new, with a further purpose or different character, altering the first

with new expression, meaning or message."  TVEyes Br. 29 (quoting *Campbell*, 510 U.S. at

---

[8]     The footnote in *Campbell* to which TVEyes cites is inapposite as it only addressed whether a "request for
permission to use the original" was bad faith, not the repeated demands that the defendant cease its willful
infringement at issue here, let alone TVEyes' (unfulfilled) promise to cease and desist.  510 U.S. at 585 n.18.

579).  TVEyes' use performs no such transformation, but rather is a direct, slavish substitute for

Fox News' own use, which its own cited cases find is not transformative.  *See Harper & Row*,

471 U.S. at 550 (fair use is precluded by superseding use of the original work); *Authors Guild,*

*Inc. v. HathiTrust*, No. 12-4547, 2014 WL 2576342, at *11–12 (2d Cir. June 10, 2014)

(providing content in a different format is not transformative, but rather is the "paradigmatic"

example of a derivative work); *Texaco*, 60 F.3d at 923 (cautioning that "untransformed copy is

likely to be used simply for the same intrinsic purpose as the original, thereby providing limited

justification for a finding of fair use"); *see also Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819

(9th Cir. 2002) ("[R]eproducing news footage into a different format does not change the

ultimate purpose of informing the public about current affairs . . . .").[9]

     Fox News' opening brief explains that TVEyes markets itself as a media "clipping

service" and that its customers also consider it to be one.  Fox News Br. 17–22, 31; *see* FX SUF

¶¶ 161–65, 167.  As a clipping service, TVEyes reproduces the Registered Works in unedited

form and enables its paying subscribers to view, download, and share unlimited high definition

clips.  FX SUF ¶¶ 151, 168, 170–71, 177–81, 188–90, 198–99.  As discussed above, courts

consistently hold that the copying and distribution by such services is not fair use because there

"is nothing transformative about that function."  *Meltwater*, 931 F. Supp. 2d at 556; *see Infinity*

*Broad.*, 150 F.3d at 108 (media monitoring "leave[s] the character of the original broadcasts

unchanged" with "neither new expression, new meaning nor new message"); *see also supra* 4.[10]

     Moreover, as detailed in Fox News' opening brief, TVEyes' use substitutes for Fox

---

[9]   *Accord Nihon*, 166 F.3d at 72 (service that merely retransmits copyrighted work to paying subscribers is "not in the least 'transformative'"); *Infinity Broad.*, 150 F.3d at 108 n.2 (finding a "change of format" not transformative); *UMG*, 92 F. Supp. 2d at 351 (retransmission in another medium is not transformation).

[10]   The Ninth Circuit opinions to which TVEyes cites favorably discuss the Second Circuit's finding of no fair use in *Infinity Broadcast*, noting that the service allowed users to listen to the radio for the same purpose as the radio broadcasts themselves.  *Kelly*, 336 F.3d at 819; *see Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (noting "retransmission of a radio broadcast over telephone lines" was not transformative).

News' own use by enabling its subscribers (1) to "watch live TV, 24/7 on any station [TVEyes is] recording," (2) to view older programming with TVEyes' DVR feature, (3) to download and edit unlimited and unrestricted high quality video clips, and (4) to e-mail and share those video clips via e-mail and social media.  Fox News Br. 32 (citing TVEyes' marketing documents and internal communications).  As a result, TVEyes' subscribers have no need for a cable or satellite subscription to watch Fox News' channels on television or its TVEverywhere service; no need to view Fox News' website to watch authorized clips or to share them using Fox News' video player; and no need to license clips through Fox News' exclusive licensing agent, ITN Source, or its partner, Executive Interviews.  *Id.*  Thus, TVEyes' service supersedes Fox News' use of the Registered Works and is not transformative.  *See Davis*, 246 F.3d at 174 (use of work "in the manner it was made to be worn" was superseding use); *Ringgold*, 126 F.3d at 79 (use of work "for precisely a central purpose for which it was created" lacked transformativeness).

Attempting to avoid the overwhelming weight of authority finding similar media clipping services not to be transformative, TVEyes desperately raises a host of inapposite and unsupported arguments in a last-ditch effort to convince this Court that its use is transformative.  ***First***, TVEyes argues that its use is transformative because it "transforms [Fox News' content] into a comprehensive, text-searchable, word index" that includes "all content broadcasts over 1,400 of [sic] television and radio stations" in a manner that is "functionally indistinguishable" from that in *HathiTrust*.  TVEyes Br. 30, 32.  As a threshold matter, by its own admission, TVEyes does not transform Fox News' content into searchable text as the closed-captioning TVEyes uses is provided by Fox News.  TV SUF ¶ 32; TVEyes Br. 6.  Moreover, TVEyes' argument suffers from a fundamental misperception as the *HathiTrust* opinion clearly favors Fox News in this case.  In *HathiTrust*, the Second Circuit found that the defendants' use was fair only because (unlike TVEyes) the search results provided by their index delivered <u>no</u> copyrighted

content to its users: "only the page numbers on which the search term is found within the work and the number of times the term appears on each page" were displayed.  2014 WL 2576342, at *1.  The defendant's search function did "not allow users to view any portion of the books they [were] searching" and, thus, did "not add into circulation any new, human-readable copies of any books."  *Id.* at *7.  Thus, as shown below, no copies of books were provided by the index in *Hathitrust*; it did not even make "snippets" of books available.



**Example of Search Results at Issue in *HathiTrust***
*Id.* at *1.

In fact, when the Second Circuit considered a different part of the system that did make copyrighted content available, it held such use <u>not</u> to be transformative.  *Id.* at *11.[11]  In stark contrast to the *HathiTrust* word index, TVEyes does not simply list the number of times a term was used in Fox News' content, but rather makes unlimited video content available to its subscribers in "high definition" without any blackouts.  FX SUF ¶¶ 177–81; *see also Salinger v. Colting*, 641 F. Supp. 2d 250, 258, 260 n.3, 262 (S.D.N.Y. 2009) (rejecting defendant's attempt at post-hoc re-characterization of sequel as commentary or criticism in light of pre-litigation

---

[11]   The *Hathitrust* opinion's remaining analysis on this issue is distinguishable as it focused on making works accessible to the blind, 2014 WL 2576342, at *12, and TVEyes does not perform that function.  FX CSUF ¶ 5.

documentary evidence), *vacated on other grounds*, 607 F.3d 68 (2d Cir. 2010) .

Moreover, Fox News' complaint does not concern TVEyes' indexing, but rather its wholesale copying and redistribution of Fox News' content, including the Registered Works.  If TVEyes' purpose truly was to provide a *Hathitrust*-like index and not simply to provide content to its subscribers, it would not have to copy and distribute all of Fox News' content or market the availability of "high definition" video clips to its subscribers.  As admitted by TVEyes' CTO, providing only an index would not require copying Fox News' audiovisual content and, more importantly, would not require making that content available to TVEyes' subscribers to watch, download, and edit in direct competition with Fox News' own offerings.  FX CSUF ¶¶ 1–2.

Further, TVEyes' claim that its purpose is not to preempt Fox News' own efforts, TVEyes Br. 31, is belied by the fact that it makes Fox News' content available in "real time" when it easily could embargo such a word index for a period of time.  FX SUF ¶¶ 144, 145, 179. In any case, the undisputed evidence shows that Fox News and ITN Source both provide robust search engines for users to identify video clips of Fox News' content for which TVEyes' service also substitutes.  *Id.* ¶¶ 110, 114.

***Second***, TVEyes argues that providing video clips of Fox News' content is transformative "as these clips are accessed [by TVEyes' subscribers] for a different purpose than the original broadcasts."  TVEyes Br. 33.  Yet, TVEyes offers no evidence to support this conclusory assertion, which does not make sense given that there is no reason to believe that viewing Fox News' content on television or Fox News' website does not also serve such purposes (whatever they may be).  In any case, as discussed above, TVEyes cannot rely on its subscribers' uses to support a finding that TVEyes' use— providing <u>all</u> of Fox News' content to paying subscribers in real time so that they can watch, download, and edit an unlimited and unrestricted number of video clips, FX SUF ¶¶ 147, 149, 151, 168, 170–71, 177–81, 188–90,

198–99— is transformative, *see supra* 6, which it clearly is not. *See supra* 11.[12]

TVEyes further argues that its service is transformative because its video clips are "small, tailored references to past events." TVEyes Br. 34. This is an obvious attempt to shoehorn itself within the reasoning of the *Bill Graham Archives v. Dorling Kindersley Ltd.* decision. 448 F.3d 605 (2d Cir. 2006). As with *HathiTrust*, however, the reasoning in *Bill Graham* favors Fox News, not TVEyes. In *Bill Graham*, the Second Circuit emphasized that the thumbnails of the Grateful Dead's concert posters used in the defendant's biography were so small that they were "inadequate to offer more than a glimpse of their expressive value" and "minimized the expressive value of the reproduced images." *Id.* at 609, 611. In other words, the small reproductions in the biography did not substitute for the original posters. By contrast, as touted in TVEyes' marketing materials, the video clips of Fox News' content are available through TVEyes in "high definition," and TVEyes' CEO admitted that a consumer, happy with these high quality video clips, would have no need for an authorized video clip from Fox News. FX SUF ¶¶ 177–81, 271. As these high definition video clips can be expanded to fill a user's screen mirroring the way that they would watch television, FX CSUF ¶¶ 15-17, they are nothing like the small thumbnails at issue in *Bill Graham*. Rather, TVEyes' use of Fox News' content is as if the

---

[12]  TVEyes also argues that the average length of video clips that its subscribers view on its service is short, TVEyes Br. 33, but again TVEyes cannot rely on such use when it is undisputed that TVEyes makes all of Fox News' content available to its users. FX SUF ¶¶ 149, 151. Further, TVEyes promotes its service as a way for subscribers to "watch live TV, 24/7" and "monitor Breaking News" without any blackouts, and to "download unlimited clips" in high definition. *Id.* ¶¶ 44–46, 162, 168–69, 177–81. It also specifically touts the availability of FNC and FBN on its service when marketing its service to potential subscribers. *Id.* ¶ 213.

In any case, TVEyes admits that the average length of the clips its users played from the Registered Works was approximately one minute, with some clips over six minutes. TV SUF ¶ 80. As the length of an average news segment is two minutes, and often times much shorter, FX SUF ¶¶ 6–8, it is no surprise that TVEyes' CEO admitted that TVEyes' subscribers "absolutely" can "download an entire news story" using its system. FX SUF ¶ 184; *see id.* ¶ 9. Further, ███ clips of Fox News content have been downloaded through TVEyes' service, including 560 clips from the nineteen Registered Works alone. *Id.* ¶¶ 225–26; TV SUF ¶ 77.

*Bill Graham* defendant was offering full size concert posters along with its biography.[13]

TVEyes also argues that providing video clips of Fox News' content is necessary to provide context "that cannot be obtained from a mere transcript." TVEyes Br. 34–35. Again, however, TVEyes makes this conclusory assertion without factual support of any kind. Further, the fair use doctrine does not extend so far as to permit a defendant to excuse unbridled copying whenever he claims that such copying provides useful context.[14] If the law were otherwise, a book reviewer could argue that providing a copy of the entire book with his review should be permitted—it certainly would provide useful context to the readers of the book review. TVEyes simply has taken too much in view of its stated purpose of providing a *HathiTrust*-type word index. *See Castle Rock Entm't, Inc. v. Carol Publ'g. Grp., Inc.*, 150 F.3d 132, 142–43 (2d Cir. 1998) (finding *Seinfeld* trivia book lacked transformativeness in light of substantial taking "to repackage *Seinfeld* to entertain *Seinfeld* viewers"); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (issuing permanent injunction "because [book] appropriates too much of [J.K.] Rowling's creative work for its purposes as a reference guide").

### 4.    Considerations of the Public Interest Favor Fox News

TVEyes addresses the public interest in its factor one analysis. TVEyes Br. 35. As a preliminary matter, the Second Circuit has recognized that "a use does not become transformative by providing a public benefit." *HathiTrust*, 2014 WL 2576342, at *6 ("Added

---

[13]    TVEyes similarly argues that its "use is even more limited than uses in other search-engine cases." TVEyes Br. 34. The two cases it cites are not from this Circuit and thus, not binding on this Court. In any event, both cases favor Fox News as they found fair use because the defendants' image search engines provided much "smaller, lower-resolution thumbnails of the images" that could not be increased in resolution as "any enlargement would result in a loss of clarity of the image," making them "inappropriate" substitutes for the plaintiffs' original images. *Kelly*, 336 F.3d at 815, 818; *Perfect 10*, 508 F.3d at 1155 (same). Moreover, the defendants' search engines "guide[d] users to [the plaintiffs'] web site," where the original images were displayed. *Kelly*, 336 F.3d at 821; *Perfect 10*, 508 F.3d at 1165 (same). By contrast, here, TVEyes takes all of Fox News' content and makes it available to subscribers as high quality video clips, which can be maximized, without improving access to authorized copies of Fox News' content. FX SUF ¶ 177–81; FX CSUF ¶ 6–9, 15–17.

[14]    As discussed above, while it cites *Swatch* in support of this argument, TVEyes (unlike the defendant in *Swatch*) is not in the business of newsgathering or reporting. *See supra* 10 n.7.

value or utility is not the test: a transformative work is one that serves a new and different function from the original work and is not a substitute for it."). In any case, as discussed in Fox News' opening brief, the public interest favors Fox News. Fox News Br. 43–44. "[T]he Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). Thus, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("Inadequate protections for copyright owners can threaten the very store of knowledge to be accessed; encouraging the production of creative work thus ultimately serves the public's interest in promoting the accessibility of such works.").

It is unclear why TVEyes relies on *Swatch* in support of its position, TVEyes Br. 35, when the the Second Circuit's finding of fair use focused on the defendant's role as a news organization. 2014 WL 2219162, at *6. TVEyes has admitted that it is not in the business of newsgathering or reporting. FX SUF ¶ 288. Rather, Fox News is the news organization in this case, and it will be "severely impeded" by a finding of fair use because it will be unable "to obtain payment for [its] expression, imperiling the economic foundation of [this] vital industr[y]." *Swatch*, 2014 WL 2219162, at *10, *aff'g*, 861 F. Supp. 2d at 340 (this Court finding "work as a prominent gatherer and publisher of business and financial information serves an important public interest, for the public is served by the full, timely and accurate dissemination of business and financial news"); *Meltwater*, 931 F. Supp. 2d at 553 ("Investigating and writing about newsworthy events occurring around the globe is an expensive undertaking and enforcement of the copyright laws permits [news organizations] to earn the revenue that underwrites that work."). "Permitting [a media clipping service] to take the fruit of [that] labor

- 18 -

for [its] own profit, without compensating [news organizations], injures [the organizations'] ability to perform this essential function of democracy." *Meltwater*, 931 F. Supp. 2d at 553.

While it argues that its service promotes the public interest by providing a searchable database, TVEyes Br. 36, TVEyes' use is far more egregious than that in the search engine cases to which it cites because it makes <u>all</u> of Fox News' content available and does not improve access to authorized copies of Fox News' telecasts or video clips. *Meltwater*, 931 F. Supp. 2d at 545, 554 (media clipping service that only made AP content available and linked back to authorized copies was not a search engine as there was no evidence that its "customers actually use[d] its service to improve their access to the underlying news stories that [Meltwater] excerpted" or that "its system systematically drives its customers to third-party websites"); *see HathiTrust*, 2014 WL 2576342, at *5 (search engines "display low-resolution versions of copyrighted images in order to direct the user to the website whether the original could be found"); *Google*, 954 F. Supp. 2d at 291 (service provided snippets of text that "act as pointers directing users to a broad selection of books"); *see also Perfect 10*, 508 F.3d at 1165 (finding each image in search engine results was a pointer directing a user to a source of information); *Kelly*, 336 F.3d at 821 (finding search engine was used to "guide users to [the plaintiff's] web site," where the original images were displayed); FX SUF ¶¶ 147, 149, 151; FX CSUF ¶¶ 6–9.

Similarly, contrary to TVEyes' argument that it would not be possible to search Fox News' telecasts by keyword without its service, TVEyes Br. 36, Fox News' website includes a robust search engine to identify Fox News' video clips by keyword. FX SUF ¶ 110. Moreover, because Fox News' content is available to the public on television and its websites, anyone with a DVR can watch, record and comment on Fox News' content. There simply is no shortage of mechanisms for the public to access Fox News' content for typical fair use purposes. Given that the public will still be able to access Fox News' telecasts through means other than TVEyes'

service, including television and Fox News' website, there is no reason to distort the principles on which copyright is based to permit TVEyes' unauthorized use. *WPIX*, 691 F.3d at 288; *UMG*, 92 F. Supp. 2d at 352 (copyright "is not designed to afford consumer protection or convenience but, rather, to protect the copyrightholders' property interests"); *Meltwater*, 931 F. Supp. 2d at 549 ("The principle purpose of the Copyright Act is to encourage the origination of creative works by attaching enforceable property rights to them.").

* * *

As its use is not transformative and the public interest favors Fox News, TVEyes' wholly commercial and bad faith exploitation of Fox News' content "takes on a heightened importance," heavily weighing this factor against fair use. *ASCAP*, 599 F. Supp. 2d at 428.

### B.   Factor Two: The Registered Works Are Creative and Expressive

The second factor in a fair use inquiry is the nature of the copyrighted work, including whether the work is expressive or creative. 17 U.S.C. § 107(2) ; *Meltwater*, 931 F. Supp. 2d at 557. As detailed in Fox News' opening brief, the Registered Works include many creative and expressive choices. Fox News Br. 6–9, 33–34. Chief among the creative elements of Fox News' Registered Works are the selection of the stories to cover, which parts to emphasize, and how to express them, as well as numerous artistic elements, such as textual and pictorial graphics, music and sound effects, set dressing, and audiovisual content. FX SUF ¶¶ 140–41. The Registered Works also embody the choices of various camera operators, who decide which lens to use, the depth of field, and the positioning of different elements in frame. *Id.* ¶ 142.

Because these different components of the Registered Works create a compilation of elements that are both "unique and creative," this factor weighs in Fox News' favor. *See Infinity Broad.*, 150 F.3d at 109 (finding such compilation in radio programs to be creative and, therefore, holding that the second factor favored the plaintiff); *see also Harper & Row*, 471 U.S.

- 20 -

at 556–57 ("[C]opyright assures those who write and publish factual narratives . . . that they may

at least enjoy the right to market the original expression contained therein as just compensation

for their investment."); *Weissmann*, 868 F.2d at 1325 (holding that scientific nature of original

work did not weigh in favor of fair use finding).

TVEyes asserts that the Registered Works are entitled to less protection due to their

factual nature.  TVEyes Br. 39.  The cases cited by TVEyes, however, show that even works that

serve an informational purpose, if creative, make fair use less likely.  *Swatch*, 861 F. Supp. 2d at

341 (this Court recognizing that "[e]ven within the field of fact works, there are gradations as to

the relative proportion of fact and fancy"); *Kelly*, 336 F.3d at 820 ("Photographs that are meant

to be viewed by the public for <u>informative</u> and aesthetic purposes . . . are generally creative in

nature." (emphasis added)); *see also Stewart*, 495 U.S. at 237 (finding "a use is less likely to be

deemed fair when the copyrighted work is a creative product" (alteration omitted)).

Similarly, TVEyes makes the uncontroversial argument that facts in and of themselves

are not protectable.  TVEyes Br. 39.  Leaving aside that the Registered Works contain many

creative elements as noted above, this argument is unavailing as it is black-letter law that

compilations of facts and the manner in which those facts are expressed are protectable and can

be extremely creative, as illustrated by the cases cited by TVEyes.  *Feist Publ'ns, Inc. v. Rural

Tel. Serv. Co.*, 499 U.S. 340, 348–49 (1991) (finding that in compilations of facts the "author

typically chooses which facts to include, in what order to place them, and how to arrange the

collected data so that they may be used effectively by readers" and holding such collections of

words and subjective descriptions of facts to be copyrightable); *Sparaco v. Lawler, Matusky,

Skelly, Engineers LLP*, 303 F.3d 460, 467 (2d Cir. 2002) (finding "manner of expression

employed in communicating the factual information" protectable as "considerable skill and

originality can be exercised . . . in the setting forth of unprotected information—in the selection

- 21 -

or elimination of detail, the size, shape, and density of informative legends, the establishment of

conventions relating to color or design to represent . . . features, and many other details of

presentation"); *see also Taggart v. WMAQ Channel 5 Chi.*, No. 00 Civ. 4205, 2000 WL

1923322, at *4–5 (S.D. Ill. Oct. 30, 2000) (distinguishing interviewee's responses in Q&A from

the interviewers prepared questions and the resulting videotaped interview).

     **C.    Factor Three: TVEyes Copied the Registered Works in Their Entirety**

     The third factor in a fair use inquiry is "the amount and substantiality of the portion used

in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  This factor has both

quantitative and qualitative dimensions, which consider the portion of the copyrighted work

taken in relation to the whole and the importance of that portion to the work.  *Meltwater*, 931 F.

Supp. 2d at 557.   TVEyes admits that it "capture[d] the entirety of each of the 19 [Registered

Works]" verbatim.  TVEyes Br. 41; FX SUF ¶¶ 149, 151.  Accordingly, this factor favors Fox

News.  *See Harper & Row*, 471 U.S. at 565 (verbatim copying evidences qualitative value of

copied material); *Davis*, 246 F.3d at 175 (stating that when copying is "wholesale," a defendant

"cannot benefit from the third factor"); *Infinity Broad.*, 150 F.3d at 110 (finding that third factor

favored plaintiff as defendant provided "his subscribers with access to every radio station . . . 24

hours a day, seven days a week"); *Weissmann*, 868 F.2d at 1325 (finding that copying of work

word-for-word, even with "slight additions," weighed against a finding of fair use); *ASCAP*, 599

F. Supp. 2d at 431 (finding substantial taking given verbatim copying).[15]

     TVEyes asserts that its verbatim copying of all of Fox News' content is permissible

because it was necessary to TVEyes' purpose in creating a word index like that at issue in

*HathiTrust* and "to convey the full meaning and context surrounding the keyword mention."

---

[15]    TVEyes' cited cases are in agreement with these principles.  *See Vanderhye*, 562 F.3d at 642 ("Generally speaking, as the amount of the copyrighted material that is used increases, the likelihood that the use will constitute a fair use decreases." (internal quotation marks omitted)); *Swatch*, 861 F. Supp. 2d at 342 (finding that use of an entire work "generally weighs against fair use").

TVEyes Br. 41–42.  TVEyes, however, is a classic example of a defendant that has taken too much of the copyrighted work for its stated purpose.  If, as it now argues, TVEyes intended its service to be a *HathiTrust*-type word index, it does not need to provide unlimited high definition video clips to its users that they can watch, download, and edit without restriction.  *Castle Rock*, 150 F.3d at 144 (finding *Seinfeld* trivia book took too much content to make its "rather straightforward point"); *Warner Bros.*, 575 F. Supp. 2d at 548 (finding that "extensive borrowing that might be expected of a copyright owner, not a third party author," was not "reasonably necessary" to purpose).  Furthermore, as discussed above, TVEyes' assertion that it needs to provide all of Fox News' content to provide "context" is inconsistent with the limited reproduction permitted by the fair use doctrine.  *See supra* 17.[16]

Also, TVEyes' reliance on *Vanderhye* is misplaced as the defendant in that case (unlike TVEyes) "did not publicly disseminate or display plaintiffs' works and did not send them to any third party 'other than the instructor to whom plaintiffs submitted their own papers.'"  562 F.3d at 641.  TVEyes' service also is unlike the Google Books search engine, which "black-listed" (i.e., did not show) one of the snippets on each page of the books it copied and at least one out of ten pages in each book.  *Google*, 954 F. Supp. 2d at 287.  Further, unlike Google, TVEyes does not ensure that its service will not "supersede or supplant books" by instituting "security measures to prevent users from viewing a complete copy" of the Registered Works or by

---

[16]  TVEyes also asserts that the length of the video clips its users chose to play was "not excessive," TVEyes Br. 42, and that they were "tailored" to its users' supposed "research objectives."  *Id.* at 43.  TVEyes' assertions, however, are conclusory and unsupported, particularly in light of the fact that TVEyes made all of Fox News' content available and provided its users the content that they wanted most (*i.e.*, the "heart" of the works for those users).  *Meltwater*, 931 F. Supp. 2d at 554–55 (holding service that "systematically provides its subscribers with what in most instances will be the essence of the [copyrighted works] relevant to" them was a clipping service and did not constitute fair use).  Moreover, the undisputed facts show that its subscribers used TVEyes' service in a manner consistent with substituting TVEyes' video clips for watching Fox News' channels or authorized video clips.  *See supra* 16 n.12.  In any case, as discussed above, TVEyes cannot defend its unbridled and unauthorized taking and redistribution of Fox News' content by pointing to the actions of its users, particularly in light of TVEyes' wholesale copying.  *See supra* 6.  Further, TVEyes' own cases hold that a "taking may not be excused merely because it is insubstantial with respect to the infringing work."  *Stewart*, 495 U.S. at 238; *Harper & Row*, 471 U.S. at 565 (same).

improving access to authorized copies of Fox News' telecasts or video clips.  *Id.*; *see HathiTrust*, 2014 WL 2576342, at *10 (word index had "extensive security measures" to prevent downloading content, including "a mass download prevention system called 'choke'"); *supra* 19.[17]

In short, TVEyes' verbatim copying and redistribution of the Registered Works (including the "heart" of the works) clearly is both quantitatively and qualitatively substantial and, thus, this factor weighs in Fox News' favor.  *See* Fox News Br. 34–35.

**D.     Factor Four: TVEyes' Use Harms the Market for and the Value of the Registered Works**

The fourth factor in a fair use inquiry is "the effect of the use upon the potential market for or value of the copyrighted work," including harm to the market for the original work and derivative works.  *Campbell*, 510 U.S. at 590; 17 U.S.C. § 107(4) .  This factor is not restricted to TVEyes' own substantial use, but rather considers whether unrestricted and widespread conduct like TVEyes' would cause additional harm to Fox News.  *Harper & Row*, 571 U.S. at 568.  In *Campbell*, a case cited by TVEyes, the Supreme Court found a near-presumption of market harm exists in the "context of verbatim copying of the original in its entirety for commercial purposes."  510 U.S. at 591 (discussing *Sony*, 464 U.S. at 451).  As TVEyes copied the Registered Works verbatim, in their entirety, as part of its for-profit business, this presumption heavily weighs this factor against fair use.

1.     TVEyes' Use Harms the Original Market for the Registered Works

Without any evidentiary support, TVEyes asserts that Fox News' revenues from the Registered Works' original market are "unaffected by TVEyes' service."  TVEyes Br. 45.  As detailed in Fox News' opening brief and the evidence cited therein, however, it is clear that

---

[17]     TVEyes' use also is distinguishable from the out-of-circuit cases it cites as the images in those cases were much smaller, low resolution thumbnails that did not substitute for the original images.  *See supra* 17 n.13.

TVEyes harms Fox News' original market for the Registered Works.  TVEyes' marketing materials tout that its system offers live streams of FNC and FBN to "watch live TV, 24/7," and its subscribers use TVEyes to watch television.  Fox News Br. 35 (citing FX SUF ¶¶ 168, 170–71, 213–15).  As the Second Circuit stated in a case relied on by TVEyes, the fair use doctrine is "subject to an important proviso: A fair use must not excessively damage the market for the original by providing the public with a substitute for that original work."  *HathiTrust*, 2014 WL 2576342, at *6.[18]  As discussed below, by replacing Fox News as the supplier of its own telecasts on television and through its TVEverywhere online service, TVEyes "offers itself as a market substitute" for Fox News, *Davis*, 246 F.3d at 175–76, which "is precisely the kind of harm the fourth factor aims to prevent."  *Infinity Broad.*, 150 F.3d at 111.

As recognized by the Second Circuit, "live retransmissions of . . . copyrighted programming over the Internet" harms both affiliate and advertising revenues.  *See WPIX*, 691 F.3d at 285.  Fox News' affiliate fees are paid by cable, satellite, and other multichannel video programming distributors.  FX SUF ¶ 260.  Its advertising fees are paid by different companies to place advertisements on its channels.  *Id.* ¶ 264.  In both cases, the fees are determined, in part, by the number of FNC and FBN viewers (i.e., Fox News' ratings).  *Id.* ¶ 260.

By watching FNC and FBN on TVEyes instead of on television, TVEyes' subscribers are not included in Fox News' ratings, ██████████████████████████████████████ ████████████████████.[19] *Id.* ¶¶ 261–63. ████████████████████████████████████ ████████████████████████████████████████████████████ *Id.* ¶ 264; *see WPIX*, 691 F.3d at 286 (citing *Cablevision Sys. Dev. Co. v. MPAA*, 836 F.2d 599, 603 (D.C. Cir. 1988)

---

[18]   *HathiTrust* is otherwise distinguishable with regard to market harm because, unlike Fox News, the plaintiffs "admitted that they were unable to identify 'any specific, quantifiable past harm, or any documents relating to any such past harm,' resulting from any of the [defendants'] uses of their works."  2014 WL 2576342, at *9.

[19]   Fox News also enables its viewers to stream FNC and FBN on the Internet through its TVEverywhere service. Those viewers see advertising and soon will be counted in Fox News' ratings.  FX SUF ¶¶ 97–100.

CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

("Local advertisers will not pay extra to reach viewers who cannot reasonably be expected to

patronize their businesses, so the revenue base from which to compensate the owners understates

the value of the use of the materials, and the copyright holders would be under compensated."

(alterations omitted)).  If this use becomes widespread, the effect would decimate Fox News.

Thus, there can be little question that TVEyes' service substantially diminishes the value of Fox

News' copyrighted programming (which includes the Registered Works) by harming the

revenues Fox News receives from its channels.  *WPIX*, 691 F.3d at 285; *Wainwright Secs. Inc. v.*

*Wall St. Transcript Corp.*, 558 F.2d 91, 96 (2d Cir. 1977) (finding no fair use where use of

plaintiff's reports "was blatantly self-serving, with the obvious intent, if not the effect, of

fulfilling the demand for the original work").

2.    TVEyes' Use Harms the Derivative Market for the Registered Works

As discussed in Fox News' opening brief, TVEyes' use also impairs the derivative

market for video clips of the Registered Works.  Fox News Br. 37–40.  Each of TVEyes'

arguments that its service does not harm this market fails.

**First**, TVEyes argues that Fox News "cannot manufacture an injury by claiming that it

has in the past, or will in the future, seek licensing fees from [a] media-monitoring service [like

TVEyes] to use Fox [News] content."  TVEyes Br. 44.  TVEyes' own documents, however,

reveal that it pays fees to some content owners, ███████████████ , for the the right to

reproduce, distribute, and display audiovisual content.  FX SUF ¶ 245.  In addition, other

copyright holders have indicated that media clipping services typically pay them to use their

content.  *Id.* ¶ 250.  Thus, by not paying Fox News anything for the use of its content, TVEyes

causes Fox News to lose the benefit of any royalty revenue from this traditional derivative

television market.  *Id.* ¶ 279; *see Davis*, 246 F.3d at 175–76 (taking a copyrighted work for free

allowed defendant to avoid "paying the customary price," that plaintiff "was entitled to charge

CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

for the use of his" work, and that, as a result, plaintiff "suffered market harm through his loss of the royalty revenue to which he was reasonably entitled in the circumstances, as well as through the diminution of his opportunity to license to others"); *Meltwater*, 931 F. Supp. 2d at 553 ("Moreover, permitting Meltwater to avoid paying licensing fees gives it an unwarranted advantage over its competitors who do pay licensing fees.").

Moreover, TVEyes asserts that its "text-searchable database" does not have "any effect on the market for or value of the [Registered] Works." TVEyes Br. 45. That, however, is a grossly incomplete description of TVEyes' service, which, as discussed above, goes well beyond the *HathiTrust* word index that did not make any copyrighted content available to its users by providing unlimited and unrestricted "high definition" video clips of Fox News' content. *See supra* 13. Thus, TVEyes provides a media clipping service that substitutes for Fox News' own use and, thus, is not transformative and causes market harm. *See supra* 4, 11.

**Second**, while TVEyes admits that Fox News has distributed and licensed thousands of video clips of its content through its exclusive licensee, ITN Source, FX SUF ¶ 265, TVEyes nevertheless argues that its service "does not substitute for that potential market" because TVEyes' video clips only are used for "internal use." TVEyes Br. 46. That argument, however, is yet another example of TVEyes' disingenuousness as the undisputed evidence shows that TVEyes promotes the fact that its subscribers can use its service beyond internal use, including to "[e]mail unlimited clips to unlimited recipients" and "[p]ost an unlimited number of clips" to social media. FX SUF ¶¶ 189–90, 196, 198. In fact, TVEyes' CEO admitted that its subscribers can "forward the video to other people," "upload the video to YouTube," "tweet the video," or "put the video in a PowerPoint presentation." *Id.* ¶ 190. Over ▓▓▓▓ of these unlimited, un-blackedout "high definition" video clips of Fox News' content have been downloaded from TVEyes' service without any license fees paid to ITN Source, ▓▓▓▓▓▓▓▓▓▓

███████████████████ *Id.* ¶¶ 177–81, 225, 268.  Moreover, the evidence cited by TVEyes fails

to show any contractual or similar restriction on the use of the video clips provided by its service.

Fox News' Responses to TVEyes' 56.1 Statement ("FX RSUF") ¶¶ 7–9.

TVEyes also argues that no market harm has occurred because ITN Source has not

identified sales of video clips of the particular nineteen representative Registered Works and Fox

News' existing "licensees seek to use Fox [News'] content for entirely different purposes than

TVEyes' clients."  TVEyes Br. 46–47.  That is not surprising, however, because by offering its

subscribers the ability to watch and download Fox News' content and use it for unlimited

purposes, the evidence shows that TVEyes significantly has curtailed ITN Source's ability to

compete in the market for video clips of Fox News' content.  FX SUF ¶¶ 168, 170–71, 177–80,

186–89, 265–67.  In fact, Executive Interviews, ITN Source's partner, ██████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Fox

News Br. 38; FX SUF ¶¶ 177–79, 269–71, 255–59.  TVEyes even markets itself as "more

effective and far less expensive than using old-fashioned press clipping services."  FX SUF ¶

165.

Moreover, while TVEyes argues that it is relevant that it only made the Registered Works

available for 32 days after they aired, TVEyes Br. 46, that is precisely the time during which Fox

News' up-to-the-minute news programing is most valuable and there was no limit on TVEyes'

subscribers' access to the Registered Works during that time period.  Further, TVEyes'

subscribers can save and access the Registered Works well beyond 32 days  as TVEyes' User

Manual encourages its subscribers to "[a]lways save" their clips to TVEyes' servers, because

"[t]his will ensure your clip is saved FOREVER!!"  FX SUF ¶ 193 (emphasis in original); *see

also id.* ¶¶ 146–49, 162, 170, 179, 191–92, 214.

Thus, there is little question that TVEyes harms Fox News' actual and potential licensing market for video clips of its content, including the Registered Works. *See* 17 U.S.C. § 107(4); *see also Campbell*, 510 U.S. at 593 (recognizing that "the licensing of derivatives is an important economic incentive to the creation of originals"); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1377 (2d Cir. 1993) ("[I]t is a safe generalization that copyright holders, as a class, wish to continue to sell the copyrighted work and may also wish to prepare or license such derivative works as book versions or films."); *Meltwater*, 931 F. Supp. 2d at 559 ("Where there is a fully functioning market for the infringer's use of the copyrighted material, it will be difficult for the infringing party to show that it made fair use without paying a licensing fee."); *ASCAP*, 599 F. Supp. 2d at 432 ("By using ASCAP music without compensating ASCAP, applicant avoids paying the 'customary price' ASCAP is entitled to charge for the use of its songs.").

**Third**, TVEyes asserts that its use does not harm Fox News' derivative market because certain features of TVEyes' service are not available on Fox News' websites. TVEyes Br. 47–51. This argument is puzzling in light of the fact that TVEyes "bears the burden of showing an absence of 'usurpation' harm." *Infinity Broad.*, 150 F.3d at 111. TVEyes' burden is not met by arguing that its service offers features that Fox News' websites do not. Quite the reverse, TVEyes must show that its service of providing unlimited high definition video clips to its subscribers does not usurp Fox News' actual or potential derivative market. *See id.* (finding differences in the parties' services did not change the fact that defendant's service affected plaintiff's potential derivative market); *Castle Rock*, 150 F.3d at 145–46 (finding that plaintiff's decision not to enter derivative market occupied by defendant did not change fair use analysis); *Meltwater*, 931 F. Supp. 2d at 557 (finding display of analytics and analysis—"whether it be a graphic display of geographic distribution of coverage or tone or any other variable included by [the defendant]—is an entirely separate service . . . from the publishing of excerpts from

- 29 -

copyrighted articles" and, thus, irrelevant to fair use analysis).

Moreover, the evidence is clear that TVEyes usurps Fox News' derivative market because it robs Fox News of the revenues it would otherwise receive from providing video clips of Fox News' content on its websites and those of its syndication partners, Yahoo!, YouTube, and Hulu.  FX SUF ¶ 103, 106, 134.  Fox News posts a substantial number of video clips online, including 70 separate video clips from the Registered Works alone.  *Id.* ¶¶ 104, 272–73.  These authorized clips can be distributed using social media platforms, shared using a link, or displayed on a third-party website using Fox News' proprietary video player, which includes links back to Fox News' websites.  *Id.* ¶¶ 107–08, 274.  Each of these features directs users back to Fox News' websites, thereby increasing their audience and, in turn, Fox News' revenues from pre-roll and banner advertising.  *Id.* ¶¶ 129–30, 274–75.  TVEyes directly competes with these video clips by giving its subscribers access to an unlimited number of clips without paying Fox News any licensing fees and by doing so before Fox News' digital unit is able to post authorized clips on Fox News' websites.  *Id.* ¶¶ 103, 168–69, 174, 177–80, 279.  As a result, TVEyes' users have no reason to visit Fox News' websites to view authorized video clips.[20]

TVEyes' arguments simply do not address the foregoing usurpation of the market for Fox News' video clips:

- TVEyes first points to its Watch Term functionality (*i.e.*, continually running searches for pre-selected keywords) as a feature that Fox News does not offer.  TVEyes Br. 47–48.  Alerting users that a word was spoken on one of Fox News' channels, however, does not require providing high definition video clips of Fox News' content

---

[20]   Contrary to TVEyes opposing argument, TVEyes Br. 51 n.12, it is entirely logical for its subscribers to pay $500 a month for unlimited and unrestricted access to high definition video clips.  Moreover, TVEyes places neither technological nor contractual restrictions on what its subscribers can do with video clips once they are downloaded nor adds watermarks or copyright notices to its video clips.  FX SUF ¶ 188; FX RSUF ¶¶ 7–9.  As a result, the video clips it supplies are susceptible to additional copying and further unlimited, viral distribution. FX SUF ¶¶ 189–90, 277.

for TVEyes' users to watch, download, and clip.  In any case, the evidence shows that Fox News, too, has services that send e-mail alerts when different news stories appear on its channels.  FX CSUF ¶ 10.  Moreover, as TVEyes' own Systems Architect attests, Google provides a "Google News" search that allows users to find mentions of keywords on the Internet.  Declaration of David Seltzer, dated June 25, 2014, ¶ 9.

- TVEyes' second argument is that, while TVEyes permits the use of video clips for "*only* commercial use," Fox News' website terms of use prohibit such use without prior permission.  TVEyes Br. 48.  As indicated above, however, Fox News encourages its video clips to be distributed and used in any number of ways, including sharing them with others and posting them on third-party websites, because it directs users back to its websites and provides it with revenues.  *See supra* 58.  Furthermore, ████████████████████████████████████████████ ███████████████████████  TVEyes directly competes with Fox News' derivative market for its video clips.  FX SUF ¶¶ 112–18, 265–71.

- TVEyes next argues that it provides a complete record of what was broadcast on Fox News' channels, while Fox News only makes a portion of its content available on its websites and, sometimes, in a manner different than that which was originally telecast.  TVEyes Br. 48–49.  It is true that Fox News does not post video clips of all of its content on its website.  FX SUF ¶¶ 280–82.  ████████████████████████ █████████████████████████████████████████ *Id.* █████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* ¶¶ 121– 23, 146–49, 283, 289.  Fox News also does not include its news ticker in the online versions of its content as video clips may be accessed months or years later when the

- 31 -

information in Fox News' news ticker no longer reflects current events.  FX CSUF ¶ 11.  In any case, all of Fox News' content is available through a typical cable or satellite television subscription, including the ability to record Fox News' content for future viewing.  Fox News Br. 32.  Moreover, as indicated above, Fox News' complaint is not with a *HathiTrust*-type word index, but with TVEyes' unchecked copying and redistribution of <u>all</u> of Fox News' content.  *See supra* 15.

- TVEyes then argues that it does not harm Fox News' market because TVEyes' service is better than the search engine on Fox News' website.  TVEyes Br. 50.  This case, however, does not turn on the parties' search services, but rather on TVEyes' offering of unlimited high quality video clips.[21]  *See supra* 13.

- TVEyes finally argues that "Fox [News'] Website cannot be used to monitor Fox News, because it is controlled by Fox News."  TVEyes Br. 50.  Again, TVEyes misrepresents the fair use standard.  The question is not whether Fox News' website could be used to monitor Fox News' telecasts—although clearly anyone with a cable subscription is free to do so and to write critical articles supporting or critiquing Fox News—but rather whether TVEyes' distribution of  unlimited high quality clips substitutes for Fox News' authorized clips.  Clearly, they do.  *See supra* 30.

    3.    <u>Similar Widespread Use Would Harm Fox News</u>

While TVEyes admits that courts "consider whether 'unrestricted and widespread conduct of the sort engaged in by [TVEyes] would result in a substantially adverse impact on the potential market for the original work," TVEyes Br. 44 (quoting *Swatch*, 2014 WL 2219162, at *14), its opening brief only glancingly references this critical issue.  Clearly, as detailed in Fox

---

[21]    TVEyes' arguments also are factually wrong.  Fox News' video clips indicate the name of the segment, the date on which it aired, and the show title.  FX RSUF ¶ 105.  Moreover, Fox News' website permits its users to narrow their search by date and will return all of the results relevant to a user's query.  *Id.* ¶¶ 108, 110.

News' opening brief, widespread use like TVEyes' use would threaten numerous original and derivative markets for the Registered Works and devalue them by diverting viewership from Fox News' channels and websites. Fox News Br. 40–42; *see Ringgold*, 126 F.3d at 81 (defendant's use of plaintiff's work for its intended purpose without compensation, if widespread, would adversely impact the market for licensing plaintiff's work and, thus, weighed against fair use).

As TVEyes' CEO admits, the newsgathering business is expensive and the costs are considerable. FX SUF ¶ 66. To offset those costs, news organizations, like Fox News, require significant and sustained financial and human investments. *Id.* ¶¶ 14–16, 64–92. As discussed in Fox News' opening brief, the news industry has seen significant contractions due to lost revenue sources, resulting in numerous shuttered newspapers and television news bureaus, shrunken network news audiences, and a moving away from breaking news by Fox News' cable news competitors. Fox News Br. 40–41.

TVEyes and similar companies do not have to shoulder these costs and do not remunerate those that do. Moreover, they steal viewership from Fox News' channels and websites, which will reduce the amount of money Fox News' affiliates and its advertising partners are willing to pay Fox News. FX SUF ¶¶ 289–91. Similarly, companies will not buy video clips that they can download directly from TVEyes. *Id.* The ███████ video clips of Fox News' content, noted above, ████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* ¶¶ 225, 268. There simply is no question that, by robbing Fox News of these revenue streams for the Registered Works, TVEyes and similar services threaten Fox News' incentive to make the investments necessary to create news and information programming. *Id.* ¶¶ 292–93.

4.     <u>Considerations of the Public Interest Favor Fox News</u>

Even though already addressed with regard to the first fair use factor, TVEyes

repetitively readdressed the issue of the public interest in its factor four analysis.  TVEyes Br.

51–54.  As discussed above, however, any consideration of the public interest favors Fox News

in this case.  *See supra* 17.  TVEyes' additional arguments are as unpersuasive as those discussed

above.  ***First***, it argues that it "has created a repository of information that can be accessed for

research on a previously impossible scale."  TVEyes Br. 52.  As discussed throughout this brief,

however, Fox News' complaint is not with a *HathiTrust*-type word index, *see supra* 15, but with

TVEyes' superseding use of Fox News' content, *see supra* 11, which harms the revenue streams

through which Fox News offsets the cost of its newsgathering and reporting.  *See supra* 24.

 ***Second***, TVEyes argues that it "serves the public interest by facilitating access to news

made by Fox [News]" and "criticism of Fox [News]."  TVEyes Br. 52–54 (emphasis omitted).

Nothing decided by this Court, however, will prevent anyone, whether a TVEyes subscriber or

otherwise, from writing about Fox News to praise its reporting or to criticize it, as criticism and

commentary are classic forms of fair use.  17 U.S.C. § 107.  Nor will anyone be prevented from

accessing all of Fox News' content through a cable or satellite subscription.  Fox News is not, as

TVEyes attempts to characterize it, "seek[ing] to control what parts of its broadcast may and may

not be accessible to the public."  TVEyes Br. 55.  Fox News' telecasts already are available to

the public, and any commentary on Fox News' reporting can be made by watching and/or

recording Fox News' channels on television or its TVEverywhere service, viewing Fox News'

authorized video clips, or seeking a clip from ITN Source.  There simply is no need to sanction

TVEyes' for-profit media clipping service in contravention of three decades of settled law, *see

supra* 4, to ensure the opportunity for commentary by TVEyes users, particularly given that

courts consistently hold that the use subscribers make of a service should not be considered in

deciding questions of fair use.  *See supra* 6.

 Further, the Supreme Court has held that "[t]he promise of copyright would be an empty

one if it could be avoided merely by dubbing the infringement a fair use 'news report'" and that

the "fact that the words the author has chosen to clothe his narrative may of themselves be

'newsworthy' is not an independent justification for unauthorized copying of the author's

expression." *Harper & Row*, 471 U.S. at 557; *see Twin Peaks*, 996 F.2d at 1376 ("[P]ublic

reaction to a televised program" does not make its "entire content . . . a fact that could be

reported and analyzed."); *Wainwright*, 558 F.2d at 96 (use that "appropriated almost verbatim the

most creative and original aspects of [researcher's] reports . . . which represent a substantial

investment of time, money and labor" was not fair use, because it "did not provide independent

analysis or research; it did not solicit comments on the same topics from other financial analysis;

and it did not include any criticism, praise, or other reactions by industry officials or investors");

*see also Tullo*, 973 F.2d at 797 (news clipping service was "no more a 'news reporter' than the

[Video Tape Recorder] owner who tapes a publicly broadcast movie is a filmmaker").[22]

* * *

Fundamentally, TVEyes suggests an unfounded, unworkable, and unsupported approach

to the fair use doctrine. If adopted by this Court, TVEyes' argument would, for example, permit

companies to copy entire books without authorization and sell the copies for considerable

revenues based solely on the unsubstantiated assumption that one of their clients might,

hypothetically, use that copy to create a book review. That is not a fair use and TVEyes' service

is "not legitimate coverage of a news event; instead it [is], and there is no other way to describe

it, chiseling for personal profit." *Wainwright*, 558 F.2d at 96–97. Accordingly, the fourth factor

---

[22]  Even *Swatch*, to which TVEyes cites, distinguished Bloomberg's recording of a conference call from the
actions of defendants that "attempted to use the banner of newsworthiness to supersede the core objects of
original works whose production critically depended upon copyright protection." 2014 WL 2219162, at *10.
The court noted that "[f]inding fair use in those cases would have severely impeded the ability of news and
research organizations to obtain payment for their expression, imperiling the economic foundation of vital
industries," as is the case here. *Id.* (discussing *Nihon*, 166 F.3d at 72; *Fin. Info., Inc. v. Moody's Investors Serv.,
Inc.*, 751 F.2d 501, 510 (2d Cir. 1984); and *Wainwright*, 558 F.2d at 97).

heavily weighs against fair use, and Fox News respectfully requests that this Court deny

TVEyes' summary judgment motion as to fair use.

## II.  TVEYES IS LIABLE FOR HOT NEWS MISAPPROPRIATION AND FOX NEWS' CLAIM IS NOT PREEMPTED

As detailed in Fox News' opening brief, this case presents a classic example of hot news

misappropriation under New York law.  Fox News is a news organization that spends

tremendous resources ███████████████████ to collect and disseminate the news as it is

happening 24 hours a day, 365 days a year.  FX SUF ¶¶ 19–20, 64–65, 67–68, 78–81.  These

efforts include operating news bureaus around the world, employing journalists and other

personnel to gather and report time-sensitive news in a speedy and accurate manner, and paying

the Associated Press and Reuters to obtain raw, unvoiced video from all over the world to

supplement Fox News' own newsgathering efforts.  *Id.* ¶¶ 67–86.  Fox News ███████████

███████████████████████████████ when it covers unanticipated breaking news events as

its crews rush to the scene and deliver their reports around-the-clock.  *Id.* ¶¶ 87–92.

Without expending <u>any</u> resources on newsgathering, TVEyes copies all of Fox News' up-

to-the-minute, time-sensitive news reports as soon as they are aired on Fox News' two channels,

FNC and FBN.  *Id.* ¶¶ 146–49, 162, 170, 179, 214.  TVEyes markets itself as making that

programming available to its subscribers for a fee in "real time," thereby allowing them to

"watch live TV, 24/7" and "monitor[] Breaking News."  *Id.* ¶¶ 162, 168–69.  TVEyes re-

transmits Fox News' information almost instantaneously to its subscribers—essentially at the

same time it airs on Fox News' two channels and even before Fox News is able to post its own,

authorized clips of those news reports on its websites and those of its syndication partners.  *Id.*

¶ 103.  As a result, TVEyes' service directly competes with and siphons viewers away from Fox

News' channels, websites, and clip licensing business. *Id.* ¶¶ 260–279.

Through its motion for summary judgment, TVEyes attempts to evade its clear-cut liability for misappropriating Fox News' news reports by putting forth several contorted arguments and asserting that its affirmative defense of preemption somehow applies to Fox News' hot news claim.  As discussed below, however, none of these arguments is supported by law or fact, and TVEyes fails to meet its burden of establishing preemption.  Moreover, TVEyes tellingly makes no argument as to the first element of Fox News' claim—that Fox News "generates or gathers information at a cost"—and, thus, there is no dispute that Fox News has established that element.  *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 845 (2d Cir. 1997).[23]  For these reasons and those below, TVEyes' motion for summary judgment on Fox News' hot news misappropriation claim is meritless.

## A.      TVEyes Has Misappropriated Fox News' Time-Sensitive "Hot News"

TVEyes argues that Fox News failed to identify the particular breaking news segments that TVEyes has misappropriated.  TVEyes Br. 58.  Preliminarily, there is no requirement that Fox News identify each and every breaking news story—especially as its entire business is news reporting and TVEyes copies <u>everything</u> Fox News airs and makes it available to TVEyes' subscribers in "real time."  *See Int'l News Serv. v. Associated Press,* 248 U.S. 215, 231–232 (1918) (claim based on "pirating of complainant's news by defendant" and "appropriating news taken from bulletins issued by complainant or any of its members"); *Barclays Capital, Inc. v. Theflyonthewall.com, Inc.,* 650 F.3d 876, 881 (2d Cir. 2011) (claim based on taking all "trading 'Recommendations'" regularly put out by financial institutions); *NBA,* 105 F.3d at 843 (claim

---

[23]   The elements of a hot news misappropriation claim under New York law are: "(i) the plaintiff generates or collects information at some cost or expense, . . . (ii) the value of the information is highly time-sensitive, . . . (iii) the defendant's use of the information constitutes free-riding on the plaintiff's costly efforts to generate or collect it, . . . (iv) the defendant's use of the information is in direct competition with a product or service offered by the plaintiff, . . . [and] (v) the ability of other parties to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened."  *NBA,* 105 F.3d at 852 (citations omitted).

based on taking and displaying "updated information of professional basketball games in progress"). In any event, as discussed below, Fox News has identified numerous specific breaking news stories that TVEyes has misappropriated. *See infra* 38.

As explained in its opening brief, Fox News' whole business is operating two news channels (FNC and FBN) and delivering breaking news 24-hours a day, seven days a week. FX SUF ¶¶ 1, 4, 12, 19, 55. FNC is a news channel that is dedicated to delivering general breaking news, as well as political and business news and information. *Id.* ¶¶ 12, 19. It gathers and reports the latest news every hour of every day of the year. *Id.* ¶ 20. FBN is a financial news channel that provides real-time information and reports on financial and business news. *Id.* ¶ 55. In addition, to facilitate its constant news reporting on both channels, Fox News has a text news ticker, which appears along the lower edge of the screen and delivers the latest updates. *Id.* ¶ 30. As explained by Jason Villar, Fox News' Director of Market Research, FNC is well-known for its breaking news coverage and the number of viewers that watch Fox News' channels significantly exceed the number of viewers that watch other channels during key breaking news events, such as election night coverage in 2012, the Boston Marathon bombing, the George Zimmerman verdict, the royal baby's birth, the Washington Navy Yard shooting, and the Senate vote during the government shut down in 2013. Villar Decl. ¶¶ 12–14. TVEyes admits that it appropriates all of Fox News' news reports—which would include the examples provided by Mr. Villar, as well as each and every unanticipated breaking news report and news ticker update—as soon as they air on FNC and FBN and makes them available to TVEyes' own subscribers in "real-time." TVEyes Br. 41; TV SUF ¶ 13; FX SUF ¶¶ 149, 151.

Moreover, in discovery, Fox News identified numerous specific representative examples of its news reporting between July 31, 2010 and July 30, 2013 and produced all of its coverage of those events. As noted in TVEyes' brief, such examples include news reports about Hurricane

Irene from August 24–31, 2011, the Arab Spring uprisings in Libya from July 4 – September 4, 2011, the Newtown Connecticut school shooting from December 14–18, 2012, North Korea tensions from April 4–13, 2013, and the Moore, Oklahoma tornado and aftermath from May 19–25, 2013.  TVEyes Br. 58.  None of these major news events consisted of a single, isolated story, but rather they unfolded over several days or months, and Fox News continuously reported the latest updates and developments during the identified time periods.  As illustrated below, these breaking news reports were labeled as "BREAKING NEWS" and "ALERT," and Fox News' news ticker provided additional, immediate updates throughout the telecast.  As described by Jay Wallace, Fox News' Senior Executive Provider of News and Politics, the following are just a handful of the breaking news stories on FNC that TVEyes misappropriated from Fox News:

- Fox News' initial breaking coverage of the shooting at Sandy Hook Elementary School on the morning of December 14, 2012, which repeatedly interrupted the regular telecast of *America's Newsroom*.



- Fox News' breaking coverage of Pope Benedict XVI's resignation on February 11, 2013, as well as Fox News' coverage of the first signs of white smoke at the Vatican and the announcement of the election of Pope Francis on March 13, 2013.



- Fox News' breaking updates throughout the week of the Boston marathon bombing and manhunt, including breaking coverage of the bombing on April 15, 2013, with

live footage and assessment of the immediate aftermath; Fox News' interruption of reporting on the FBI's release of suspect photos to provide breaking updates about the shootout between police and the bombing suspects on April 19, 2013; Shepard Smith's reports on the imminent capture of the second suspect later that day; and initial reports of the second suspect's surrender into custody shortly thereafter.

 

- Fox News' initial coverage of the Moore, Oklahoma tornado on May 20, 2013, with live footage of the tornado and repeated warnings to the public to seek safety underground, as well as Shepard Smith's interruption of *The O'Reilly Factor* later in the day to report breaking updates on the death toll and devastation at the scene.

 

Wallace Decl. ¶ 37, Ex. 57.

Fox News also reports breaking news on FBN all day and night from its headquarters in New York—the world's business capital—as well as its bureaus in Chicago, Los Angeles, Washington, D.C., and London.  FX CSUF ¶ 12.  As FBN's focus is economic news, it provides real-time information and reports on the financial and business sectors, including breaking business and financial stories.  FX SUF ¶¶ 55, 60.  When a major story develops, FBN will continue to provide updates.  *Id.* ¶¶ 24, 63.  Several times in the recent past, FBN has reported a news story and, within a matter of minutes, stock prices have spiked, revealing the importance of the timely business information it reports.  FX CSUF ¶ 13.  Moreover, TVEyes has used the fact that FBN regularly breaks news in marketing its service to potential subscribers.  *Id.* ¶ 14.

Fox News has established that its news reports were time sensitive when they were gathered and when they were misappropriated by TVEyes. *See BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 612 (S.D.N.Y. 2010) ("Plaintiffs must allege not only that the news was time-sensitive when it was gathered, but that it was time-sensitive when it was misappropriated."). Fox News reports breaking news contemporaneously as the events unfold and as new information becomes available. Its focus is on news of the day, not some kind of historic retrospective. Further, TVEyes copies all of Fox News' news reports as soon as they air on FNC and FBN, and, as TVEyes touts in its marketing materials, redistributes them to its subscribers in "real-time." FX SUF ¶¶ 144, 149, 168. Indeed, TVEyes promotes its service to subscribers as a way to "monitor Breaking News," including the breaking news stories illustrated above. FX SUF ¶ 169. Thus, Fox News has satisfied the time-sensitiveness element of its claim. *See BanxCorp*, 723 F. Supp. 2d at 612–13 (finding time sensitiveness was pleaded where information is collected in "real-time" and updated "24x7" and as the defendants engaged in "constant and continuous unauthorized <u>daily</u> reproduction and multimedia redistribution" (emphasis in original)); *see also INS*, 248 U.S. at 238–39 (defendant's actions "result[ed] in permitting pirated news to be place in the hands of defendant's readers sometimes simultaneously with the service of competing Associated Press papers, occasionally even earlier."); *NBA,* 105 F.3d at 853 (element met where the information transmitted to defendant's customers "is not precisely contemporaneous, but it is nevertheless time-sensitive").

TVEyes tries to excuse its wholesale misappropriation by arguing that Fox News cannot own "every fact reported" on a world event. TVEyes Br. 59. Fox News makes no such claim and would have no issue if TVEyes sent its own journalists to report about the same breaking news event. While it may not own a "fact" about a breaking news event (e.g., the fact that a tornado hit Moore, OK on May 20, 2013), however, Fox News does own its particular report of a

breaking news event that it has generated and gathered at a cost, and which may include, among other things, interviews with particular sources or eyewitnesses that do not appear in other reports on the same breaking news event.

TVEyes also asserts that Fox News' claim fails because Fox News has not established that the facts in its news reports were "first published exclusively" by Fox News.  TVEyes Br. 59.  Yet, this is not required under the law.  Fox News is not required to show that it was the only entity to cover a story for a hot news claim under New York law, and TVEyes cites no legal authority to support its position.[24]  Indeed, such a requirement would render this tort meaningless as virtually no newsworthy event happens in the world without more than one reporter covering it.  It would be nonsensical to permit TVEyes to misappropriate Fox News' breaking news reports verbatim simply because, for example, CNN or the New York Times may also have sent a reporter to gather similar information and to report on the same story.  As noted above, all Fox News need establish is that it gathered the information at a cost and that the information was time-sensitive when it was misappropriated by TVEyes.[25]  It has done both.

## B.    TVEyes Free-Rides on Fox News' Information Gathering Efforts

As discussed in Fox News' opening brief, TVEyes is the quintessential "free rider."  Fox News gathers and reports time-sensitive news continuously at great effort and expense.  FX SUF

---

[24]   In *Silver v. Lavendeira,* the court denied a motion for a preliminary injunction because there was no evidence that the plaintiff, an Internet blogger who simply reported on stories she saw on the Internet, had incurred substantial costs in obtaining the information at issue.  No. 08 Civ. 6522, 2009 WL 513031, at *6 (S.D.N.Y. Feb. 26, 2009) ("The fact of such widespread availability calls into question Plaintiff's conclusory assertion that she incurred substantial costs in obtaining the information at issue.").  Here, TVEyes does not dispute that ███ ████████████████████████████████████████████████ in its newsgathering and reporting services.  *See supra* 36.  Further, the other two cases TVEyes cites merely stand for the proposition that the news must be time sensitive when it is gathered and misappropriated, which Fox News has established.  *See BanxCorp*, 723 F. Supp. 2d at 612–13 (denying motion to dismiss hot news claim as plaintiff pleaded facts indicating time sensitiveness); *Capitol Records, Inc. v. Naxos of Am., Inc.*, 262 F. Supp. 2d 204, 206, 209 (S.D.N.Y. 2003) (finding hot news misappropriation did not apply to sound recordings of historic musical performances from the 1930s because they continue to be salable when old, as opposed to news which is valuable while it is fresh).

[25]   In any event, Fox News does break news stories before other news organizations.  For example, Fox News was the first news organization to interview George Zimmerman.  Wallace Decl. ¶ 27, Ex. 37 (describing exclusive interview on *Hannity* and attaching exhibit containing entire *Hannity* program).

¶¶ 65, 67–92.  TVEyes, by contrast, makes no investment in newsgathering or reporting and bears none of the substantial operating costs needed to cover the news on a daily basis around the world, leaving Fox News to shoulder those costs.  *Id.* ¶¶ 64–92, 288.  TVEyes distributes Fox News' reports on its subscription-based service at essentially the same time that they air on Fox News' channels and before video clips of those reports appear on Fox News' websites and the websites of its subscription partners.  *Id.* ¶¶ 103, 162, 279, 290.  It even publicizes the fact that FNC and FBN are available on its system to induce people who want the information gathered by Fox News to subscribe.  *Id.* ¶¶ 213–15.  This is the epitome of free-riding, which entails "enabling [TVEyes] to produce a directly competitive product for less money because it has lower costs."  *Barclays*, 650 F.3d at 901 (quoting *NBA*, 105 F.3d at 854); *see also Pollstar v. Gigmania Ltd.*, No. 00 Civ. 5671, 2000 WL 34016436, at *6 (E.D. Cal. Sept. 1, 2000) (free riding exists where defendant copies information from plaintiff and profits from its use).

Relying on the Second Circuit's decisions in *NBA* and *Barclays* (which it refers to as *Fly*), TVEyes attempts to sidestep liability by re-characterizing its wholesale copying and redistribution of each and every one of Fox News' news reports to its subscribers in real time as "reporting" on Fox News.  TVEyes Br. 61.  This argument, however, is as ridiculous as arguing that copying and redistributing an entire live telecast of an NBA basketball game or the Oscars award ceremony constitutes "reporting" on the game score or which film won Best Picture.

TVEyes merely automatically copies and redistributes all of Fox News' televised news reports—including each and every fact and piece of information that was collected and disseminated by Fox News on its channels—to its paying subscribers in "high definition" and in real time without any blackouts, without providing independent commentary or analysis, and without bearing the substantial costs required to collect that news.  Hence, it is like INS, which "lift[ed] factual stories from AP bulletins and sen[t] them by wire to INS papers."  *NBA*, 105

F.3d at 845 (citing *INS,* 248 U.S. at 231).  In fact, TVEyes' conduct is more egregious than INS's

conduct as INS rewrote some of the stories it lifted from AP bulletins, while TVEyes simply

copies and redistributes everything verbatim.  *INS*, 248 U.S. at 231.  TVEyes also is like the

hypothetical examples of free riding that were articulated by the Second Circuit.  In *NBA*, the

court held that, if the defendants "were to collect facts from [the plaintiff's] Gamestats pager to

retransmit them to [their] SportsTrax pagers, that would constitute free-riding and might well

cause Gamestats to be unprofitable because it had to bear costs to collect facts that SportsTrax

did not."  105 F.3d at 854.  Similarly, in *Barclays,* the court stated that, if a plaintiff Firm were to

"collect and disseminate . . . facts about securities recommendations in the brokerage industry . .

. and were [defendant] to copy the facts contained in the Firm's hypothetical service . . . that

would appear to be an *INS*-type claim and might survive preemption."  650 F.3d at 905–06.

　　　　TVEyes does not "report" on Fox News.   It does not employ journalists who gather facts

and write independent reports about Fox News and others in the television news industry.

TVEyes is not reporting on news Fox News makes by itself reporting or making news.  *Barclays,*

650 F.3d at 902 n.36 ("[INS] was not reporting on news AP was making by itself reporting

news—*e.g.* 'The Associated Press and major news networks reported last Sunday that President

Obama plans to nominate Solicitor General Elena Kagan to replace retiring Supreme Court

Justice John Paul Stevens.' . . .—let alone making news—*e.g.*, 'Tamer Fakahany, an assistant

managing editor at the AP's Nerve Center in New York, has been named deputy managing editor

overseeing the center at AP headquarters.'").  Thus, TVEyes is not like the electronic news

service in *Barclays* that employed about fourteen people who were "devoted to content

production" and reporting on financial news, including reporting on the "facts that [Plaintiff]

Firms and others in the securities business have made recommendations with respect to the value

and the wisdom of purchasing or selling securities."  650 F. 3d at 882 (emphasis in original); *see*

*also id.* at 903 ("The [Plaintiff] Firms are making the news; Fly . . . is breaking it.").  Nor is

TVEyes like the pager company in *NBA* that employed people to watch games on television or

listen to them on the radio and key information about the game into a personal computer, which

information was then relayed to a central computer to compile statistics and other information

from the games for retransmission.  105 F.3d at 844.

TVEyes also asserts that it should be allowed to copy and disseminate all of Fox News'

breaking news reports simply because it does not pass them off as its own, but rather it

"attributes" them to Fox News.  TVEyes Br. 61.  Passing off, however, is not among the five

elements of a New York state claim of hot news misappropriation listed by the Second Circuit.

*See NBA,* 105 F.3d at 852 (listing elements).  In any event, Fox News has presented evidence of

passing off.  TVEyes has crafted the overall appearance of its website and service in a way that

gives the misimpression to consumers that it has permission or a license from Fox News and

other content owners to redistribute their news reports when it does not.  FX SUF ¶¶ 255–56.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████  *Id.* ¶¶ 166, 255.  Further, as reported by Elizabeth Ashton of Executive

Interviews, ████████████████████████████████████████████████████

Ashton Decl. ¶ 21.  TVEyes does not "watermark" content or take other steps to inform its

subscribers that video clips downloaded from TVEyes are not licensed.  FX SUF ¶¶ 186–88.

Accordingly, TVEyes' argument that it does not "free ride" fails.

### C.    TVEyes' Appropriation of Fox News' News Is a Threat to Fox News' Newsgathering Activities

TVEyes' argument that it has no "plausible impact" on Fox News' sources of revenue

and, thus, does not threaten Fox News' existence or reduce its incentive to collect the news is

baseless.  TVEyes Br. 62.  As discussed below and in Fox News' opening brief, TVEyes harms

Fox News' business and reduces its incentives to gather and report the news.  More critically, if

TVEyes' use became widespread and countless others were allowed to copy and disseminate Fox

News' news reports in the same way, Fox News' business would be destroyed.  *See NBA*, 105

F.3d at 852 (finding consideration of "the ability of <u>other parties</u> to free-ride on the efforts of the

plaintiff" relevant to this element (emphasis added)).

By copying all of Fox News' news reports and disseminating them to its subscribers in

real time, TVEyes directs viewers away from Fox News' channels and eliminates their need to

purchase a subscription from one of Fox News' affiliates.  FX SUF ¶¶ 120, 146–49, 162, 170,

179.  TVEyes' siphoning off of Fox News' viewers causes Fox News to earn less revenue from

affiliate and advertising fees.  *Id.* ¶¶ 126, 131, 260–64.  Similarly, TVEyes replaces the need for

Fox News' authorized video clips by making all of Fox News' content almost instantaneously

available as video clips.  *Id.* ¶¶ 162, 168, 173–75, 177, 267, 269–271, 290.  ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████  *Id.* ¶¶ 103, 122–23.  Thus, TVEyes reduces Fox News' website traffic, resulting in

reduced online advertising revenue and fewer users seeing Fox News' promotional offerings.  *Id.*

¶¶ 131, 290.  ██████████████████████████████████████████████████

███████████████████████████████████████████████  *Id.* ¶¶

225, 265–71.

If TVEyes' actions are deemed lawful and this conduct becomes widespread, Fox News

would have little incentive to collect news 24-hours a day as its whole business would be

threatened.  *Id.* ¶¶ 284–92; *see NBA*, 105 F.3d at 852, 854 (undermined incentive to create

television program would be shown by a service that acts "as a substitute for . . . watching [NBA

- 46 -

Case 1:13-cv-05315-AKH Document 59 Filed 09/02/14 Page 54 of 65

games] on television"); *Pollstar*, 2000 WL 34016436, at *6 (this element sufficiently pleaded by allegation that defendant profits from its use of information copied from plaintiff); *cf. WPIX*, 691 F.3d at 288 (noting that "desire to create original television programming surely would be dampened if their creative works could be copied and streamed over the Internet in derogation of their exclusive property rights"). Indeed, as discussed above and in Fox News' opening brief, the threat to Fox News' incentive to continue its newsgathering efforts is real, as demonstrated by the fact that, due to lost revenue sources, the news industry has shrunk considerably, resulting in numerous defunct newspapers and pared down television bureaus, and even a moving away from breaking news by Fox News' cable news competitors. *See supra* 33; Fox News Br. 40–41.

### D.  TVEyes' Services Directly Compete with Fox News' Services

TVEyes' assertion that it does not directly compete with Fox News is legally and factually wrong. TVEyes Br. 62–63. As articulated by the Second Circuit, this element of Fox News' hot news claim only requires "free riding by [TVEyes] on [Fox News'] product, which enables [TVEyes] to produce a <u>directly competitive product</u> for less money because it has lower costs." *NBA*, 105 F.3d at 854 (emphasis added). There is no requirement that the parties themselves be direct competitors in all aspects of their businesses.[26] Here, while TVEyes does not provide news reports or operate a cable news channel and Fox News is not itself a media clipping service for other content owners, the record shows that TVEyes takes Fox News' news reports and uses them in direct competition with Fox News' own offerings in multiple ways.

First, TVEyes' service is a substitute for Fox News' channels and TVEverywhere service. TVEyes copies and retransmits Fox News' news reports in "real-time" to its subscribers. FX SUF ¶¶ 144, 149, 168. TVEyes' subscribers can watch Fox News' news reports without purchasing a cable subscription to watch them on television or online via Fox News'

---

[26]  Also, TVEyes need not be Fox News' only or even primary competitor and, thus, ███████████████████████████████████████████████ TVEyes Br. 63.

CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

TVEverywhere service. *Id.* ¶¶ 97–99, 120, 162, 170, 172, 179. TVEyes emphasizes this feature

in its own marketing materials, which tout TVEyes' service as a way to "watch live TV, 24/7"

and "monitor Breaking News" without any blackouts. *Id.* ¶¶ 168–69. TVEyes even promotes the

fact that Fox News' channels are available on its service. *Id.* ¶¶ 213–215. Indeed, TVEyes'

subscribers actually use the service to watch television. *Id.* ¶ 171.

Second, TVEyes competes with Fox News' distribution and identification of clips of its

breaking news reports by marketing itself as a better alternative to "old-fashioned press clipping

services." *Id.* ¶ 165. As discussed in its opening brief, Fox News posts video clips of its news

reports on its own websites and sells them through ITN Source and Executive Interviews. *Id.* ¶

101–04, 112–118, 291. TVEyes directly competes with this aspect of Fox News' business by

making a primary selling feature of its service "the ability to download and edit an unlimited

number of" "high definition" clips of Fox News "content recorded by TVEyes," which can then

be edited, archived, and shared with others. *Id.* ¶¶ 177, 181, 198, 267. To make matters worse,

TVEyes makes these clips available to its subscribers <u>before</u> Fox News and its licensee can make

them available and, thus, "scoops" Fox News. *Id.* ¶ 103, 144, 168, 279. TVEyes' system even

competes with Fox News' identification of video clips through the Fox News search engine. *Id.*

¶ 278.

As a result of TVEyes' efforts, its subscribers, which overlap with Fox News' viewers,

have made Fox News' content among the most downloaded on TVEyes' service. *Id.* ¶¶ 221–26,

229; FX RSUF ¶ 92. TVEyes' subscribers have viewed almost █████ video clips of Fox

News' content and have downloaded over ███ clips of Fox News' content using TVEyes'

service. *Id.* ¶¶ 224–25. Again, TVEyes' subscribers were able to do this without purchasing a

cable subscription to access Fox News' channels, visiting Fox News' websites, or doing business

with Fox News' clip licensee. ████████████

*Id.* ¶¶ 161–67, 269.   Further, TVEyes' CEO even admitted that a consumer would have no need

for an authorized video clip if they obtained a clip from TVEyes.  *Id.* ¶ 271.

Thus, the evidence overwhelmingly shows that TVEyes uses Fox News' news reports in

direct competition with Fox News' services.  *See BanxCorp*, 723 F. Supp. 2d at 614 (finding

direct competition properly pled and supported by allegation that "Plaintiffs [publishers of

money market and CD rates] market HYSAs and CDs that compete with Defendants' [retailer

Costco and bank] co-branded savings account); *Twentieth Century Sporting Club, Inc. v.

Transradio Press Service, Inc.*, 300 N.Y.S. 159, 161 (N.Y. Sup. 1937) ("[T]here can be no doubt

that the service of the defendant in supplying [a "running account of the fight while it is in

progress"] to broadcasting stations would constitute them competitors of the plaintiffs to the

extent and for the purpose of broadcasting the [boxing] exhibition."); *cf. Standard & Poor's

Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 710 (2d Cir. 1982) (finding competition

sufficiently shown for general misappropriation where the plaintiff licenses a product that

competes with the defendant's use of the plaintiff's property).

### E.    Fox News' Hot News Misappropriation Claim Is Not Preempted

As discussed above and in Fox News' opening brief, Fox News has established that

TVEyes is liable for hot news misappropriation.  In tacit recognition that this is a textbook case

of hot news misappropriation, TVEyes, in desperation, asserts that the claim is preempted even

though it is well-settled that a claim for hot news misappropriation is recognized under New

York law and not preempted by copyright law.  *Associated Press v. All Headline News Corp.*,

608 F. Supp. 2d 454, 461 (S.D.N.Y. 2009) ("A cause of action for misappropriation of hot news

remains viable under New York law, and the Second Circuit has unambiguously held that it is

not preempted by federal law.").  Indeed, several courts, including the Second Circuit, have

- 49 -

concluded that, "[b]ased on legislative history of the 1976 [Copyright Act amendments], it is generally agreed that a 'hot-news' *INS*-like claim survives preemption." *Barclays*, 650 F.3d at 894 (quoting *NBA*, 105 F.3d at 845); *see also Nash v. CBS, Inc.*, 704 F. Supp. 823, 834–35 (N.D. Ill. 1989) (noting, in a case cited by TVEyes, that the Supreme Court of Illinois adopted the tort of misappropriation first recognized in *INS* and concluding that "hot news" misappropriation claims escape § 301 preemption), *aff'd*, 899 F.2d 1537 (7th Cir. 1990); *X17 v. Lavendeira*, 563 F. Supp. 2d 1102, 1107 (C.D. Cal. 2007) (concluding that California recognizes the "hot news" species of misappropriation and that it avoids preemption). As the Second Circuit explained, this is because the claim of hot news misappropriation contains "extra elements" that are not essential to a copyright infringement claim, including (i) the time-sensitive value of factual information, (ii) the free-riding by a defendant, and (iii) the threat to the very existence of the product or service provided by the plaintiff." *NBA*, 105 F.3d at 853.

Fox News has established each of these "extra elements." Accordingly, TVEyes cannot meet its burden of establishing its preemption defense. *See Hicks v. State*, 674 A.2d 55, 59–60 (Md. 1996) (holding that the party claiming preemption of state law by the Copyright Act "bears the burden of proof"); *cf*. NIMMER ON COPYRIGHT § 1.01 ("Because fair use is an affirmative defense, the burden of proving it always rests on the party asserting it.").

## III.   FOX NEWS HAS ESTABLISHED ITS MISAPPROPRIATION CLAIM AND TVEYES' PREEMPTION DEFENSE FAILS.

TVEyes misconstrues Fox News' misappropriation claim by arguing that it is duplicative of Fox News' copyright infringement and "hot news" misappropriation claims. This claim is distinct from the others and based on two separate forms of unfair competition, which are recognized under New York law. First, Fox News' claim is based on TVEyes' misappropriation of its distribution system, which is the result of Fox News' labor, skill and expenditures in

negotiating and constructing a complex system with cable and satellite operators to be able to

disseminate news and information quickly to the public.  Compl. ¶ 73.  Second, Fox News' claim

is based on TVEyes' deception of customers and misleading them into thinking that Fox News

has authorized its use of content from FNC and FBN.  *Id.* ¶ 74.  As discussed below, Fox News

has established both forms of unfair competition, and TVEyes cannot meet its burden to show

that Fox News' claim is preempted by copyright law.  Thus, TVEyes' motion for summary

judgment is meritless as to this claim as well.

### A.    Fox News Has Established Its Misappropriation Claim

New York's common law of unfair competition is based on "the equitable principle that a

person shall not be allowed to enrich himself unjustly at the expense of another." *Georgia*

*Malone & Co. v. Rieder,* 19 N.Y.3d 511, 516 (2012) (quoting *Miller v. Schloss*, 218 N.Y. 400,

407 (1916)).  Such a claim can be grounded in either (1) "appropriation of the exclusive property

of the plaintiff" or (2) "deception."  *H.L. Hayden Co. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005,

1025 (2d Cir. 1989).   As discussed below, Fox News can establish both grounds.

### 1.    TVEyes Has Misappropriated the Results of Fox News' Labor, Skill and Expenditures in Competition with Fox News

New York law recognizes claims based on the misappropriation of the results of

another's labor, skills and expenditures in bad faith and using them in direct competition.  *Hall v.*

*Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1371 (Fed. Cir. 2013); *Roy Exp.,* 672 F.2d at 1105.[27]

Here, Fox News has devoted tremendous labor, skill and expenditures to craft a complex

system with its affiliates to disseminate news and information quickly to the public.  FX SUF ¶¶

---

[27]    Unfair competition based on the misappropriation of another's labor, skill and expenditures does not require a
showing of consumer confusion.  *See Hall,* 705 F.3d at 1370 (finding viable claim for misappropriation based
on defendant's alleged misappropriation of plaintiff's labor, skill, and expenditures, with no discussion of
confusion*); Speedry Prods., Inc. v. Dri Mark Prods., Inc.*, 271 F.2d 646, 650 (2d Cir. 1959) (noting that in the
misappropriation cases, unlike in palming off cases, "recovery seems not to depend upon the confusion or deceit
of the public").

64–92, 119–28; *S&P*, 683 F.2d at 710 (finding protectable property right in index due to the expertise by 25–30 employees and significant financial expenditures that were invested to create it); *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 303 (S.D.N.Y. 2010) (finding property right due to exercise of due diligence, planning, and development in creating business plans); *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 502 (S.D.N.Y. 2002) (finding sufficient investment to create property right given that the plaintiff "had more than twenty professionals working for over two years on its computer system, at a cost of over two million dollars").

Further, TVEyes has used Fox News' distribution system for its own commercial benefit and in direct competition with Fox News' use.  *Hall*, 705 F.3d at 1369; *Roy Exp.,* 672 F. 2d at 1105 (an "unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property").  As detailed above, TVEyes provides the news reports disseminated on Fox News' distribution system to its own subscribers in "real-time" for a fee.  FX SUF ¶¶ 143–49, 169.  This is a commercially important feature of its service.  *Id.* ¶¶ 147, 210–26.  In its marketing materials, TVEyes touts the availability of FNC and FBN, and these channels are among the most watched and downloaded by TVEyes' subscribers.  *Id.* ¶¶ 213–15, 221–26.  By diverting viewers to its service, TVEyes directly competes with and harms Fox News' and its licensees' distribution of this content.  As a result, TVEyes has been enriched in the amount of ▮▮▮▮▮ in 2013 alone.  *Id.* ¶ 236; *see S&P*, 683 F.2d at 710 (finding competition where the plaintiff licenses a product that competes with the defendant's use of the plaintiff's property); *Robert I. Gluck, M.D., LLC v. Kenneth M. Kamler, M.D., LLC*, 905 N.Y.S.2d 232, 1166 (N.Y. App. 2010) (finding plaintiffs to have demonstrated *prima facie* case "by submitting evidence establishing that the defendants wrongfully diverted the plaintiffs' business to themselves"); *see also Hall*, 705 F.3d at 1371.

Moreover, TVEyes has misappropriated the results of Fox News' labor, skill and

expenditures in bad faith. ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ FX SUF ¶ 122. ███████████████████████████

██████████████████████████████████ *Id.* ¶ 121. ██████████████████████

████████████████████████████████████████████

███████████████████████████████████████████ *Id.* ¶ 123.  TVEyes,

however, makes all of Fox News' content available online in a manner that ████████████

██████████████████████████████████████████████████████████████

████████  *Id.* ¶¶ 146–49, 289.  Thus, TVEyes has acted in bad faith.  *Dior v. Milton*, 155

N.Y.S.2d 443, 457 (N.Y. Sup. 1956) (finding defendant acted in bad faith by interfering with

plaintiff's contractual relationship with its licensees).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ FX SUF ¶ 124.  As a result, Fox News' affiliates' subscriber

contracts have specific terms that prohibit, among other things, "redistributing or retransmitting

the Service."  *Id.* ¶ 125.  TVEyes, however, uses Fox News' distribution system and content in

violation of its agreements with these providers, *id.* ¶¶ 152–59, which further evidences its bad

faith.  *Roy Exp.*, 503 F. Supp. at 1146–47, 1152 (finding bad faith where defendant acquired

product through illicit means).

     Accordingly, TVEyes is liable for misappropriation and its motion for summary

judgment lacks merit.

     2.    <u>TVEyes Has Deceived Consumers</u>

     In addition, TVEyes is liable for unfair competition because there is evidence in the

record that it has deceived consumers by crafting the overall appearance of its website and

service in a way that gives the misimpression to consumers that it has permission or a license

from Fox News and other content owners when it does not.[28] ███████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████   FX SUF ¶ 255.   There is no disclaimer or indication on the

TVEyes' website that tells consumers that TVEyes has no license from Fox News to use its

content.[29]   *Id.* ¶ 256.   ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████   *Id.* ¶ 257.   ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████   *Id.* ¶ 258.   ██████████████████████

████████████████████████████████████████████████████████

---

[28]   TVEyes' assertion that no survey evidence has been submitted, TVEyes' Br. 68, is irrelevant as there is no requirement for survey evidence to establish a claim. *See Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 656 (2d Cir. 1989) (upholding judgment for plaintiff in state-law unfair competition claim, and finding consumer survey not required to prove actual confusion). Moreover, "the Second Circuit has repeatedly recognized that evidence that a defendant deliberately engaged in a deceptive commercial practice raises a presumption of consumer confusion," which TVEyes has failed to rebut. *Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991) (internal quotation marks omitted). Further, TVEyes' assertion shows its duplicity as it previously had insisted that the parties not submit expert reports on liability issues.

[29]   TVEyes states that it "does not claim to have a business relationship with Fox, and nothing in the manner in which TVEyes market and promotes itself suggests that such a relationship exists." TVEyes' Br. 68. Its sole support for that claim, however, is a single conclusory paragraph in David Ives' declaration, which is not supported by any document, testimony, or even further analysis.

- 54 -

███████████████████████████████████████████████████

████████████████████████████████     *Id.* ¶ 259.

As a result of this deception, consumers have turned to TVEyes for Fox News' content, rather than to Fox News or its licensees.  *Id.* ¶¶ 171, 257–59, 269; *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.,* 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011) (Hellerstein, J.) (stating claim can be established by showing "efforts of a salesman or a company, by words or deeds, to deceive consumers into believing that accused merchandise is something else").

Further, there is evidence that TVEyes has acted in bad faith.  The fact that it has told customers that all of its clips are licensed, when they are not, is clear evidence that TVEyes is trying to deceive.  FX SUF ¶¶ 257–59.  Further, TVEyes' conduct contradicts its own stated policy and the practices of other clipping services that permission is needed from content owners to run this type of business.  *Id.* ¶¶ 238–50.  TVEyes also refused to comply with Fox News' demands to cease and desist (even though it represented that it would), and highlighted the availability of FNC and FBN in order to induce more subscribers to sign up.  *Id.* ¶¶ 213–15, 251–54; *see Microban Prods. Co. v. API Indus., Inc.*, No. 14 Civ. 41, 2014 WL 1856471, at *15 (S.D.N.Y. May 8, 2014) (granting summary judgment on misappropriation as bad faith existed due to defendant's failure to comply with cease and desist letters and attempt to capitalize on the benefits of the plaintiff's intellectual property rights); *Triboro Quilt Mfg. Corp. v. Luve LLC*, No. 10 Civ. 3604, 2014 WL 1508606, at *9 (S.D.N.Y. Mar. 18, 2014) (finding inference of bad faith in the misappropriation context where defendant used plaintiff's designs "to generate interest" in competing product).

### B.    TVEyes' Preemption Defense Fails

TVEyes' claim that Fox News' misappropriation defense is preempted by the Copyright Act fails.  In order for TVEyes to prevail on its preemption defense, TVEyes has the burden of

establishing that both "(i) the work at issue come[s] within the subject matter of copyright and

(ii) the right being asserted is equivalent to any of the exclusive rights within the general scope

of copyright." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429

(2d Cir. 2012) (emphasis added).  As discussed below, TVEyes cannot meet this burden.

TVEyes' entire argument is predicated on the assertion that Fox News' claim is based on

misappropriation of copyrighted content or "hot news."   TVEyes Br. 64–67.  But that is not true.

First, as discussed above, Fox News' misappropriation claim is based on TVEyes' use of its

distribution system that it painstakingly negotiated and constructed in order to disseminate news

and information to the public quickly.  It is well-established that distribution "systems" like this

are not protected under copyright law.  17 U.S.C. § 102(b); NIMMER ON COPYRIGHT § 1.01

(explaining that works not within the meaning of § 102 are not preempted, even if the state-

created rights therein are equivalent to copyright); *see Demetriades v. Kaufmann*, 698 F. Supp.

521, 528 (S.D.N.Y. 1988) (finding no preemption of misappropriation claim based on moldings

not protected by copyright); *see also S&P*, 683 F.2d at 710 (affirming preliminary injunction

based on misappropriation of index).

Further, none of the cases TVEyes cites to support its defense involve distribution

systems like the one at issue here or other types of materials outside the realm of copyright.

Rather, they all deal with claims based on copying content.  *See, e.g.*, *Computer Assocs. Int'l v.

Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) (computer software); *Walker v. Time Life Films,

Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (books); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905,

919 (2d Cir. 1980) (cartoon characters); *Eyal*, 784 F. Supp. 2d at 447 (jewelry designs).

Second, as discussed above, Fox News' claim also is based on TVEyes' attempts to

mislead consumers into believing that Fox News gave permission or licensed TVEyes to use its

content.  Thus, it is a forward "passing off" claim with an extra element that makes Fox News'

claim qualitatively different from a copyright claim.[30]  *Samara Bros. Inc. v. Wal-Mart Stores,*

165 F.3d 120 (2d Cir. 1998) (finding "actual confusion" to constitute extra element); *Lone Wolf*

*McQuade Assocs. v. CBS Inc*., 961 F. Supp. 587, 599 (S.D.N.Y. 1997) (finding that unfair

competition claim alleging defendants' conduct was "likely to cause confusion or mistake, or to

deceive consumers into thinking that [defendants' works] are sponsored, licensed or otherwise

authorized by, or affiliated, connected other otherwise associated with the plaintiff. . ." not

preempted by the Copyright Act); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp*., No. 96 Civ.

1103, 1996 WL 724734, at *2–3 (S.D.N.Y. Dec. 17, 1996) (finding plaintiff's unfair competition

claim based on "passing off" not to be preempted, and noting that "[t]he Second Circuit has held

that passing off claims are not preempted by the Copyright Act because they involve an element

of misrepresentation or deception which is not an element of copyright claims"); NIMMER ON

COPYRIGHT § 1.01[B][1][e] ("Similarly, crucial to liability under a deceptive trade practices

cause of action is the element of misrepresentation or deception, which is no part of a cause of

action for copyright infringement.  Thus, there is no pre-emption of . . . the state law of unfair

competition of the 'passing off' variety.").

    Accordingly, TVEyes' preemption defense fails.

## CONCLUSION

    For the foregoing reasons, Fox News respectfully requests that TVEyes' motion for

summary judgment be denied in its entirety.

---

[30]   Fox News is not asserting a "reverse passing off" claim as it does not claim that TVEyes misrepresented Fox News' works as its own.  *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 322 (S.D.N.Y. 2010).  Thus, TVEyes' reliance on the preempted reverse passing off claim in *Stadt*, TVEyes Br. 66–67, is misplaced, particularly as the *Stadt* court recognized that a forward passing off claim (like Fox News' claim here) is not preempted.  *See Stadt*, 719 F. Supp. 2d at 322 n.68.  Further, TVEyes' reliance on *Nash* also is misplaced as that court was discussing a "hot news" misappropriation claim under Illinois (not New York) law and simply held that such a claim did not require a showing of consumer deception.  704 F. Supp. at 834–35.

Dated:  New York, New York
      July 24, 2014

/s/ Dale M. Cendali
_____

Dale M. Cendali
Johanna Schmitt
Joshua L. Simmons
Felicity Kohn
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
johanna.schmitt@kirkland.com
joshua.simmons@kirkland.com
felicity.kohn@kirkland.com

Attorneys for Plaintiff
Fox News Network, LLC